## WILLCUTT v. WILLCUTT.   (No. 7446.)

(Court of Civil Appeals of Texas.   San Antonio.   Dec. 5, 1925.)

**1. Divorce ⊂⇒130—Testimony held insufficient to warrant divorce for cruel treatment.**

Husband's testimony that he left wife because she would not pay her board and fare for crossing toll bridge, and that she was without means of support, contrary to her prenuptial representations, *held* insufficient to support judgment granting divorce.

**2. Husband and wife ⊂⇒249—Interest collected on husband's notes during coverture held community property.**

Interest on notes held by husband during existence of marriage relation was not under Acts 35th Leg. (1917) c. 194, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 4621), his separate property, and wife was entitled to community interest therein on divorce.

**3. Husband and wife ⊂⇒257—Wife held entitled to community interest in rents and revenues arising from land of husband.**

In suit by husband for divorce, in which wife brought cross-action, she was entitled to community interest in rents and revenues arising from lands of husband as well as in interest on notes belonging to him.

---

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Divorce ⊜37(22) — Wife, abandoned by husband because she could not support herself, held entitled to divorce.**

In suit by husband for divorce, in which wife sought divorce by cross-action, on proof that husband abandoned wife because she could not support herself, she was entitled to divorce from him, regardless of fact that he was not entitled to divorce.

Appeal from District Court, Bexar County; W. S. Anderson, Judge.

Suit by C. E. Willcutt against Madeline Willcutt for divorce. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

C. R. MacFarlane, of San Antonio, for appellant.

John F. Perry, of Rock Springs, for appellee.

FLY, C. J. · This is an action for divorce instituted by appellee. Appellant answered by general demurrer, general denial, and a cross-action for divorce. Appellee alleged in the most general manner, giving no details or particulars, but his conclusion, that his wife had been guilty of "harsh, cruel, and unkind treatment" towards him. The cause was heard by the court, no jury being demanded, and judgment rendered granting a divorce to appellee.

[1] The only testimony in the case was that on the one side of the appellee and on the other of the appellant—a swearing bout between an antagonistic husband and wife. His testimony was totally insufficient upon which to base a decree of divorce. He testified:

That he lived with appellant 8 or 9 days, and "I left her because I had to come back to Texas, and I had to go north to look out for a little property I had there. I gave her $500 when I left. I supposed that was to satisfy her for my leaving; I never intended to go back. I left her on account of her having no means of support. She always told me she had a fine residence in St. Louis, an apartment house, rented for $66 a month, and she had plenty to support her on. * * * When I left her I never did intend to go back with her. * * * I say when I left her I didn't have any intention of going back."

Yet he wrote several letters after leaving, ending: "I will close by by sweete dreams, many kisses, Charley to Maggie"; or "So by by from Charley. Answer when yo wante, I am glad to here from yo all ways"; or "This is Sunday morning & I suppose I will bee good & go to church where all good people goes by by." He did not tell his wife when he left that he was abandoning her. His culminating grievance against appellant, which rendered living with her insupportable, was the payment of 10 cents, instead of 5, as fare across the Eads Bridge at St. Louis. This seems to have been the cause of a disagreement between them which caused him, several days afterwards, to forsake St. Louis and return to San Antonio. These are the sordid details of the grievances upon which a decree destroying the marriage of a man and woman has been decreed. This would seem to be the last step in the destruction of the sanctity or substantiality of the marriage contract.

The petition in this case was insufficient even in declaring upon a money contract, and yet it was allowed as a basis to dissolve what has in the ages past been deemed the most sacred of human relations. No facts were set forth indicating that the wife was "guilty of excesses, cruel treatment, or outrages" toward the husband, and that they constituted such ill treatment as would render their living together insupportable. She did not pay her board or her 10 cents for crossing the Mississippi river, and that was the ill treatment shown by the evidence. The evidence forms no basis for the judgment.

[2] Appellant sought to recover a community interest in the interest collected by appellee on certain promissory notes held by him during the existence of the marriage relation, and certain rents and revenues from land. The Act of April 4, 1917 (Acts 35th Leg. c. 194, § 1 [Vernon's Ann. Civ. St. Supp. 1918, art. 4621]), declares:

"All property, both real and personal, of the husband owned or claimed by him before marriage, and that acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired, and the rents and revenues derived therefrom, shall be his separate property."

[3] There is nothing named in that provision as to any increase or revenue except that arising from lands; no provision being for any increase or revenue arising from personal property. Interest is not mentioned in connection with the separate property of the husband, and it may be presumed that it was not intended to include interest collected on promissory notes belonging to the husband. This view is upheld by the fact that in the same law the wife's separate property is defined in almost the same language as that used in connection with the definition of the husband's separate property, but the definition of the wife's separate property is followed by this significant language:

"Neither the separate property of the wife, nor the rents from the wife's separate real estate, nor the interest on bonds and notes belonging to her, nor dividends on stocks owned by her, nor her personal earnings, shall be subject to the payment of debts contracted by the husband."

This in effect declared the rents on her land and interest on her evidences of debt separate and not community property. This provision

---

clearly is placed in juxtaposition to the provisions in regard to the husband, and shows that it was not intended to make the interest on the notes of the husband his separate estate. The effect of the statute is to make the separate property of the wife or any revenues arising from it exempt from any charge against it for community debts incurred by the husband. The interest collected on the promissory notes of the husband during the coverture was community property.

It is clear that the interest or increase arising from the personal property of the husband has not been declared separate property by the statute of 1917 (article 4621, Vernon's Tex. Civ. Stats.), and it is therefore unnecessary for this court to pass upon the constitutionality of the law. The Supreme Court, however, has held that the Legislature had the power to make the rents and interest of the wife exempt from community debts made by the husband, but also held that the attempt to make the rents and revenues arising from her lands separate property was unconstitutional and invalid. Arnold v. Leonard (Tex. Sup.) 273 S. W. 799. If this be the law, appellant is entitled to her community interest in the rents and revenues arising from the lands of appellee as well as the interest.

[4] If appellee abandoned appellant permanently, as he swears, for no reason except that she could not support herself, she is entitled to a divorce from him. He has no cause for a divorce, but she may have one.

The judgment is reversed, and the cause remanded, to be tried in consonance with this decision.

Reversed and remanded.