## In re GUTIERREZ.

District Court, S. D. Texas, at Brownsville.
July 2, 1929.

No. 260.

Canales & Eidman, of Brownsville, Tex., for contestant.

E. L. Kowalski, of Brownsville, Tex., for bankrupt.

HUTCHESON, District Judge. The referee found: (1) A contract between the bankrupt and his wife, for the payment to her of $25 a week for services in and about the store; (2) that the payments were six months in arrears; and (3) that they were rendered by her in the capacity of foreman or head clerk so that for three months of her claim she was entitled to priority.

Contestants urged before the referee, and here again insist, that: (1) The evidence was insufficient to establish the agreement claimed, showing on the contrary a joint management by the husband and wife of the business as a marital partnership. (2) If the evidence does establish a contract between the husband and wife to pay her for services rendered in the conduct of the community business, such contract is unenforceable.

The referee gave as his reason for allowing the claim that section 4616, Vernon's Annotated Civil Statutes of the State of Texas, provides among other things that a wife's personal earnings shall not be subject to the payment of debts contracted by the husband, thus constituting her earnings her separate property.

The conclusion of the referee that the wife's personal earnings constitute her separate property is erroneous, because the statute undertaking to make her earnings separate property is invalid as contrary to the State Constitution. Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799; Kerr v. Tyler State Bank (Tex. Civ. App.) 283 S. W. 60.

These decisions, however, declare that the Legislature had the power to and did effect the exemption of the wife's personal earnings from liabilities contracted by her husband, and it is the settled law of this state that the statutory term "debts contracted by the husband" include community as well as his separate debts. Word v. Colley (Tex. Civ. App.) 143 S. W. 257; Emerson-Brantingham Implement Co. v. Brothers (Tex. Civ. App.) 194 S. W. 609; Texas Lumber & Loan Co. v. First National Bank (Tex. Civ. App.) 209 S. W. 811.

The erroneous conclusion of the referee, that the wife's personal earnings are her separate property, therefore, notwithstanding, if the evidence is sufficient to establish that the claim in this case is for the personal earnings of the wife within the meaning of the statute, his allowance of the claim must be upheld. That is, if the circumstances establish a valid contract between the husband and wife for the payment to her of a salary, the fact that the earnings are not separate, but community property, will not, in view of the statutory exemption, prevent her recovery.

█ It remains, then, only to inquire whether she can contract with her husband for the community to pay her a salary, as she claims to have done, and whether she has in fact done so.

That she could not have made such a contract with her husband at common law, and that such contract is invalid in all jurisdictions where the common law has not been modified by statute, all the authorities agree.

That in many, if not most of the states, enabling acts have been passed, enlarging the contractual rights of the wife, and that in those jurisdictions contracts for services such as these between husband and wife have been uniformly sustained, is true. Roche v. Union Trust Co. (Ind. App.) 52 N. E. 612; Nuding v. Urich, 169 Pa. 289, 32 A. 409; In re Davidson (D. C.) 233 F. 462; In re Cox (D. C.) 199 F. 952; Dorsett v. Dorsett (183 N. C. 354, 111 S. E. 541) 23 A. L. R. 15, exhaustive note; Tuttle v. Shutts, 43 Colo. 534, 96 P. 260; In re Cormick, 100 Neb. 669, 160 N. W. 989, L. R. A. 1917D, 265.

And it is also true that while in some jurisdictions the old rule prevails, Blaechinska v. Howard Mission & Home for Little Wanderers, 130 N. Y. 497, 29 N. E. 755, 15 L. R. A. 215; In re Kaufmann (D. C.) 104 F. 768, the better rule, supported by far the greater weight of authority, is that where the wife is authorized generally to make contracts, she may contract with her husband for services outside of the purely domestic relations implied in the marital contract.

█ If the statutes of Texas as construed by its courts not only give the wife a right to her personal earnings free from her husband's debts, but clothe her with the power to contract generally with reference to them, no reason appears why she cannot make a valid contract about them with her husband so as to give her a provable claim in bankruptcy.

In Texas, prior to the passage in 1913 (Acts 33d Leg. c. 32) and following of the enabling acts withdrawing the wife's earnings and the proceeds of her separate property from liability for community debts, she had no contractual power as to any part of the community property.

On the other hand, as to her separate property, the powers of contract which had been conferred upon her by the Legislature were large and ample. In Sparks v. Taylor, 99 Tex. 424, 90 S. W. 489, 6 L. R. A. (N. S.) 381, Judge Brown said:

"The cases cited, as well as others which might be referred to, establish as the law in this state these propositions:

"(1) The husband may enter into contracts with his wife concerning their property rights. He may purchase land from her and may sell land to her. He may borrow money from her, and he may pay the debt, just as he would to any other creditor. He may become her trustee or agent for the investment of funds which belong to her, the same as he may assume those relations to any other person. In fact, his power to contract with her seems to be limited only by her incapacity to convey land to him because of the fact that he cannot join her in the conveyance. (2) A married woman may, when joined by her husband, sell or mortgage her separate property. She may, with her separate funds, buy real or personal property from her husband or another, which will be her separate estate. She may borrow money, and by mortgage bind her separate estate for its payment, or she may make her separate property surety for her husband's debt or for the debt of a third person with her husband's concurrence. Thus it will be seen that the power of the husband and wife to contract with reference to their property rights is ample to sustain this transaction, and we can see no legal obstacle to the making of such contract in Texas."

When, then, in 1913 the Legislature passed the act (Acts 33d Leg. Tex. c. 32) which exempted a married woman's personal earnings from the debts of her husband, declared such property to be the separate property of the wife, and undertook to enlarge generally the wife's contractual capacity, it was because of the title of the act and the recitations of the emergency clause, assumed by some that the act had effected the complete emancipation of the wife from contractual disability. See Speer's Law of Marital Rights in Texas, p. 198, where the author says: "The declared object, as expressed in the caption of the bill, is to confer upon the wife the power to make contracts, the purpose to remove the unjust restrictions and to enlarge the contract capacity of married women is apparent, and the act in pursuance of such purpose should be liberally construed with a view of accomplishing the end desired." And again, Id. p. 213: "Since the amendment, she has been, it would seem, authorized to contract as a feme sole, with the limitations noticed in Sec. 148." And again: "Indeed, it is hardly proper to longer speak of coverture as a disability to contract, since the change effected by the recent legislation appears al-

most completely to remove the legal disability of married women to contract. The change is revolutionary from the lawyer's standpoint, but it is full tardy enough in view of the progressive legislation in this respect by many of our sister states, and the general awakening of public thought in revolt against the archaic rules of barbarous feudal times."

When the matter first came before the courts in Red River Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923, however, a different construction was put upon the act. The Supreme Court declared expressly that the act had conferred no general contractual power upon a married woman, and that her specific powers must still be sought in the terms of specific enabling acts, and it seemed impliedly that those powers were still quite limited. Thereafter, the successive decisions of the courts of Texas, while approving the express holding of that case, have, drawing away from its shackling implication, been pricking out the extent and limits of the wife's authority under the new statutes, and to those decisions we must turn for the solution of the question, whether the statutes have empowered her to make with her husband a contract of the kind in question.

The first, as well as the most important case in line is Whitney Hardware Co. v. McMahan, 111 Tex. 242, 231 S. W. 694, 695, in which the Supreme Court, in a masterly and lawyerlike opinion, charted and marked out the course of the law, saying:

"At common law the wife had no capacity to enter into a contract. The statutes creating and safeguarding her separate estate gave her no general power to contract. Kavanaugh v. Brown, 1 Tex. 484. The Act of March 13, 1848, * * * empowered her to contract debts for necessaries furnished herself and children and for expenses to benefit her separate property. Prior to 1913 there was no other statutory grant of power to the wife to bind herself personally by contract. * * *

"The history of the 1913 Act repels the conclusion that it authorized the wife to contract as if free from disability, except when expressly forbidden. * * *

"As enacted, instead of conferring on the wife the capacity to make all contracts not specially inhibited, the Act enlarged her rights and powers; first, by giving to her 'the sole management, control, and disposition of her separate property, both real and personal,' subject to provisos as to the incumbrance, conveyance, or transfer of certain property; second, by placing the personal earnings of the wife, the rents from the wife's real estate, the interest on bonds and notes belonging to her and dividends on stocks owned by her under the control, management, and disposition of the wife alone, subject to restrictions on incumbrances and transfers; and, third, by providing that the specific items of community property confided generally to the wife's control and management, as well as her separate property, should not be subject to the payment of debts contracted by the husband."

And then, upon the principle that "when the law grants anything to any one that also is granted without which the thing cannot be," the court held that incidental to the wife's power of exclusive management and control of her separate property and of the specified portions of the community, she became invested with all such contractual power relative to same as is requisite to make her power effectual.

In Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799, and in Gohlman Lester & Co. v. Whittle, 114 Tex. 548 and 549, 273 S. W. 808, the Supreme Court consolidated the gains made in the McMahan Case, and made the further advance which that case foreshadowed.

In the Arnold Case it declared that though the statute undertaking to convert the wife's personal earnings and her rents and revenues into separate property was in violation of the Texas Constitution, still so much of the statute as exempted her earnings from community debts was valid, while in the Gohlman Lester Case it said:

"The Acts of 1913, 1917, and 1921 * * * grant to the wife the sole management, control, and disposition of her separate property, both real and personal, and exempt same from payment of debts contracted by the husband. * * * As respects cotton belonging to the wife's separate estate, the statutory provision since 1913 has been simply that it shall be subject to the wife's sole management, control, and disposition. Her authority in disposing of this kind of property is as broad and unrestricted as is the authority which the statute allows to the husband with respect to his own separate property.

"We think the Legislature intended the wife to exercise contractual discretion—as complete and comprehensive as was formerly possessed by the husband—in the management and disposition of ordinary chattels such as cotton. Not only have the statutes since 1913 committed entire dominion over such property to the wife alone, but they

have gone further and expressly exempted, not only the husband's separate property, but all community property, except such as is placed under the wife's single control, from the payment of debts contracted by the wife save for necessaries for herself or children. The almost obvious implication of the statutes is to make her separate property and the portions of the community committed to her charge liable for the payment of the wife's contracts entered into as necessary incidents to the exercise of her powers of management, control, and disposition. For, if such property is not so liable, then nothing is, and an intent cannot reasonably be ascribed to the Legislature to authorize an obligation and at the same time render its enforcement impossible."

After citing Whitney Hdw. Co. v. McMahan to the proposition that the Act of 1913 necessarily conferred on the wife the power to make any and all such contracts as were requisite to make effective the management, control, and disposition of her separate property, and the portions of the community committed to her, concludes: "Clothed with power to make such contracts, she is entitled to enforce them and to receive their benefits. * * * The husband has been made as impotent as the wife formerly was in matters pertaining to renting the wife's separate lands and collecting and disposing of rents of such lands, including the enforcement of all essentially incidental contractual obligations."

While in Cauble v. Beaver Refining Co., 115 Tex. 4, 274 S. W. 121, the court, quoting from the Whitney Hardware Co. Case, said, "As incidents to the wife's power of exclusive management and control of her separate property and of the specified portions of the community, she becomes vested with all such contractual power relative to same, as is requisite to make her power effectual," and held that a married woman was liable on her contract with third persons with reference to the business she was operating on capital acquired partly from her separate estate and partly from her personal earnings and the rents and revenues of her separate estate, saying: "It seems, too, that the power of the plaintiff in error to enter into these contracts of purchase, and thereby bind herself, should be sustained, even if the oil well rigs and machinery were not her separate property. They were personal earnings of the plaintiff in error. They were acquired by the efforts of the wife alone. Article 4622, R. S., as amended by Acts of 1913 * * * provides that 'the personal earnings of the wife * * * shall be under the control, management and disposition of the wife alone' " and "shall not be subject to the payment of debts contracted by the husband." And concludes with this broad and significant announcement: "The claim is also made that * * * Mrs. Cauble * * * had not been granted the general right to make contracts * * * and could not do so and thereby bind herself personally. * * * Notwithstanding she was engaged in the oil business without the power to make contracts generally, yet she was clothed with the same power to make contracts in the management and control of her separate property and her personal earnings, as was a married woman not engaged in such business."

From these decisions it seems plain to me that there are now, roughly speaking, three kinds of property recognized under our marriage laws:

1. The ordinary community property of husband and wife, the management, control, and disposition of which is vested in the husband.

2. The separate property of the wife, the management and control of which is vested in the wife, and

3. That part of the community property consisting of the wife's personal earnings, rents, revenues, etc., from her separate estate, the complete management and control of which is vested in the wife and as to which the wife has full and complete contractual capacity.

As to this class of property, it seems perfectly plain that the wife has absolute power of contract, subject only to the right of the husband to interfere where these contracts would prevent the wife from discharging her marital duties, and that there has been carved out from the balance of the marital property, as distinctly as her separate estate was carved out, a body of property consisting of personal earnings, etc., as to which the wife and husband may contract with each other as freely and as fully as they could and still can do with reference to separate property, and if I have correctly read the law as to the status of this property and her relations to it, no valid reason presents itself why she cannot become a creditor of her husband for services rendered in pursuance of such valid contract.

The question of the contractual powers and obligations of the wife under the new dispensation has been interestingly discussed in the Texas Law Review: "Contractual Powers of Married Women," by D. F. Bob-

bitt, vol. 1, p. 281; "Is there more than One Class of Community property in Texas," by D. F. Bobbitt, vol. 4, p. 150; and "Community Property—Liability of Wife's Interest in Community," vol. 7, p. 615, by E. B. Craig—the reading of which will well repay those interested in the general subject.

Under these views, while a wife could have no action against her husband for services rendered in his business without an express agreement for compensation, that is, no implied promise to pay for services will arise between husband and wife, she would have a right if she can clearly establish an express agreement to pay. Dorsett v. Dorsett, 183 N. C. 354, 111 S. E. 541, 23 A. L. R. 15 and cases cited in note.

Upon the question of fact whether there was a definite agreement between the husband and wife for compensation in this case, while I think the evidence susceptible of the view urged by contesting creditors that the case is one where the husband was giving his wife an allowance, and not one where he had agreed with her for compensation, and while if the matter had been submitted to me as a primary trier of facts I might not perhaps have found the existence of a contract, the referee's finding on that point is unequivocal, was supported by evidence, was not clearly erroneous, and a proper deference to a qualified trier of facts requires its affirmance. In re Cox (D. C.) 199 F. 953; Moore v. Crandall (C. C. A.) 205 F. 689; Coder v. McPherson (C. C. A.) 152 F. 951.

On the point, however, that the wife was not the manager but a clerk, and therefore entitled to preferential payment, it seems to me as a matter of law, upon the undisputed facts, the referee was wrong, and I have therefore concluded, while affirming his finding approving the wife's claim, to reverse that part of it which allows her priority, sending the matter back to the referee with directions to approve the whole claim as a simple debt without priority.