ESTATE OF ERNEST HINDS, DECEASED (MINNIE H. M. HINDS, EXECUTRIX), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9707. Promulgated September 22, 1948.

*Leroy G. Denman, Esq.*, and *Leroy G. Denman, Jr., Esq.*, for the petitioner.

*Donald P. Chehock, Esq.*, and *L. R. Van Burgh, Esq.*, for the respondent.

318

**320**

OPINION.

BLACK, *Judge*: █─The Commissioner in his determination of the deficiency determined that the transfer which decedent made on December 31, 1940, of his one-half interest in certain community property owned by him and his wife was made to the trust in contemplation of death. This transfer was made less than two years prior to decedent's death and, therefore, the statutory presumption applies. The applicable statute is printed in the margin.[1]

Decedent having died within less than two years after the transfer in question was made, the burden of proof is clearly on petitioner to show that the transfer was not made in contemplation of death. The leading case in the interpretation of the meaning of "in contemplation of death" is *United States* v. *Wells*, 283 U. S. 102, in which the Supreme Court, among other things, said:

\* \* \* The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer \* \* \*.

\* \* \* There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute.

In the later case of *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630, the Supreme Court said:

\* \* \* The transfer may be so motivated even though the decedent had no idea that he was about to die. *United States* v. *Wells*, supra, \* \* \* On the other hand, every man making a gift knows that what he gives away today will not be included in his estate when he dies. All such gifts plainly are not made in contemplation of death in the statutory sense. Many gifts, even to those who are the natural and appropriate objects of the donor's bounty, are motivated by "purposes associated with life, rather than with the distribution of property in anticipation of death." *United States* v. *Wells, supra*, \* \* \* Those motives cover a wide range. See 1 Paul, Federal Estate & Gift Taxation (1942) §§ 6.09 et seq. "There may be the desire to recognize special needs or exigencies or to discharge moral obligations. The gratification of such desires may be a more compelling motive than any thought of death." *United States* v. *Wells*,

---

[1] SEC. 811 [Internal Revenue Code]. GROSS ESTATE.

\* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter.

supra, * * * Whether such a desire was the dominant, controlling or impelling motive is a question of fact in each case. * * *

What was the impelling motive of the decedent for making the transfers here in question? The main evidentiary facts are set out in our findings. We are convinced that these facts show that the impelling motive was associated with life rather than death. Petitioner was in good health for one of his years when he made the transfer. General Beech, who for a good many years had been decedent's personal physician, testified that he was an exceptionally active and vigorous man for one of his years. He concluded his testimony by saying: "There was nothing in General Hinds' physical condition prior to January 1, 1941 which would lead any physician to anticipate his death at any time within the near future."

We are well convinced that when decedent, together with his wife, executed the irrevocable trust of December 31, 1940, he did not do so "in contemplation of death" as that phrase has been defined in *United States* v. *Wells, supra,* and other Supreme Court decisions. We think the motives which actuated him in making the transfer were associated with life, rather than death. He had executed a similar trust in 1932, but at Mrs. Hinds' urgent request he had made that trust revocable. In 1940 Mrs. Hinds suffered a serious illness from an accident from which she was slow in recovering. Decedent felt that he should make the trust irrevocable so that if she should by any chance become an invalid his wife would be provided with a sure and certain income to meet her needs. It was Mrs. Hinds' illness and not any illness of his own which motivated General Hinds in making the change. The situation was talked over with Mrs. Hinds and she finally consented that the trust should be made irrevocable. General Hinds and his wife communicated their desires to the Lawyers Trust Co., the trustee in the original trust. The Lawyers Trust Co. drew up the irrevocable trust according to instructions from General Hinds and it was signed by General and Mrs. Hinds December 31, 1940.

Respondent contends that this Court should find that, even though the decedent when he executed the trust had no idea that he was to die within the next few months, nevertheless he executed it "in contemplation of death" because the transfer was testamentary in character. One of the reasons which respondent urges in support of this contention is that soon after decedent executed the trust of December 31, 1940, he changed his will in certain respects so as to make recognition of the trust of December 31, 1940. Decedent had executed his will in 1937 and in that will he had made mention of the revocable trust of 1932 and the property which had been conveyed thereto. When the irrevocable trust of December 31, 1940, was executed, paragraph 4 of decedent's will was changed so as to insert the date of the new trust, namely, "December 31, 1940" in lieu of the date of the

former trust, "January 11, 1932." Other changes, unimportant to the question we have here to decide, were made in decedent's will shortly after the execution of the trust of December 31, 1940. We do not think, however, that these changes in decedent's will of 1937 were of the kind which would characterize the transfer which decedent made to the trust December 31, 1940, as testamentary in character. We think that when all the facts are taken together they show that the impelling motives which caused the execution of the trust of December 31, 1940, were associated with life, rather than with death, and, therefore, the trust property is not includible in decedent's estate as having been transferred "in contemplation of death." Cf. *Allen* v. *Trust Co. of Georgia, supra.*

Respondent next contends that, even though we should hold that the transfer in question was not made in contemplation of death, nevertheless it was a transfer "under which decedent has retained, for a period which does not in fact end before his death, the right to the income from the property." The Commissioner therefore contends that decedent's one-half interest in the community property which was transferred should be included in his gross estate under section 811 (c) of the code.

It is manifest that petitioner did not specifically reserve any interest in the income from the property to himself. He and his wife in executing the trust specifically directed that all the income from the property, after the deduction of necessary expenses, should be paid to his wife, Minnie H. M. Hinds, in quarterly installments. While this is true, it seems also clear that the trust income when received would be the community income of General Hinds and his wife. The petitioner in its brief contends that in Texas conveyances or transfers either to a husband or wife are presumed to be community, except where the transfer is from the husband to the wife. In that case it constitutes a gift to her and is her separate property, and cites *Lewis* v. *Simon*, 72 Tex. 470. This latter case holds that a voluntary conveyance by a husband to his wife of community property vests the property in the wife separately.

We certainly have no disposition to question the law as thus laid down by the Supreme Court of Texas in the *Lewis* v. *Simon* case, but the law as decided in that case does not at all answer the question which we have here. We have no doubt that whatever beneficial interest Mrs. Hinds owned in the corpus of the trust was her separate estate because the trust was irrevocable, but what about the income from the trust estate which was payable to her? Under Texas law the rents, dividends, interest, and increase from the wife's separate property fall into the community. See *Arnold* v. *Leonard*, 114 Tex. 535; 273 S. W. 799. That is the leading Texas case on the subject. It may well be that decedent could have used language in the trust

indenture which would have made clear that the income from the community property which he was conveying to the trustee should be paid over to Mrs. Hinds for her sole and separate use and not as community property, but he did not do so. The Circuit Court of Appeals for the Fifth Circuit, in speaking upon a similar point made in *Commissioner* v. *Porter*, 148 Fed. (2d) 566, said:

> \* \* \* It is true \* \* \* that the courts of Texas are distinctly committed to the doctrine that a grantor may do with his property by way of gift what he will, and that he enjoys great freedom here in drawing the donative instrument to give effect to his intent. \* \* \* But in view of the generally prevailing rule in Texas, that income from separate property falls when received into the community, it is certainly true that if by the use of a trust instrument this general rule can be departed from, the instrument must, in the most precise and definite way, and by the use of language of unmistakable intent, make that desire and intention clear. There is not a line in the trust instruments in question here to even suggest that the settlor of these trusts intended to change, as to the income his daughters should receive, the ordinary results flowing from the marriage state. \* \* \*

Likewise, in the instant case decedent, in conveying his one-half interest in certain stocks and bonds to the trust with direction to the trustee to pay the income to his wife for life, used no language which indicated an intent to change the ordinary rule which prevails in Texas as to community ownership of income from trust property, even though it is the separate property of the wife. The language of the trust with reference to the payment of income to Mrs. Hinds is as follows: "\* \* \* to pay the net income from the 1st day of January, 1941, together with any and all accumulations of income, to the said MINNIE H. M. HINDS, during her life, in equal quarterly payments as nearly as may be; \* \* \*" This being the language of the trust indenture and Texas law being what it is, we hold that the income of the trust property as long as the community existed was the community property of the spouses. It only became Mrs. Hinds' separate income after General Hinds' death. *Arnold* v. *Leonard*, *supra; Commissioner* v. *Porter*, *supra; Commissioner* v. *Snowden*, 148 Fed. (2d) 569; *Commissioner* v. *Sims*, 148 Fed. (2d) 574.

The petitioner also argues on his brief that whether the income was the separate property of Mrs. Hinds would be determined under the laws of the State of New York because of the following provision in the trust indenture: "This indenture and all of its provisions shall be construed, and the trust hereby created shall be administered, according to the laws of the State of New York, \* \* \*." The precise point which petitioner makes in this respect was made by the Commissioner in *Commissioner* v. *Porter*, *supra*, and was decided adversely to the Commissioner. So it seems clear that, despite the fact that decedent, when he jointly executed the trust of December 31, 1940, with his wife, irrevocably transferred his community interest in the property to the trustee for the benefit of his wife and the re-

maindermen named in the trust, nevertheless, the income payable to his wife would be the community income of the spouses so long as the community should exist. The question, therefore, which we have to decide with respect to this issue is whether decedent's continued ownership of one-half of the trust income under Texas law, after the irrevocable trust was executed, brings the transfer within the provisions of section 811 (c) which reads: "* * * a transfer, by trust or otherwise, under which he has retained * * * for any period which does not in fact end before his death (1) the possession or enjoyment of, or the *right* to the income from the property * * *." (Emphasis supplied.)

Section 81.18 of Treasury Regulations 105 deals with "Transfers with possession or enjoyment retained" and reads in pertinent part as follows:

> Except in the case of a bona fide sale for an adequate and full consideration in money or money's worth, the gross estate embraces (section 811 (c)) all property transferred by the decedent, whether in trust or otherwise, if he retained or reserved the use, possession, right to the income, or other enjoyment of the transferred property * * *.
>
> * * * * * *
>
> The use, possession, right to the income, or other enjoyment of the property will be considered as having been retained by or reserved to the decedent to the extent that during any such period it is to be applied towards the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit.
>
> If such retention or reservation is of a part only of the use, possession, income, or other enjoyment of the property, then only a corresponding proportion of the value of the property should be included in determining the value of the gross estate.

As we have already pointed out, the decedent did not specifically retain or reserve any income from his part of the community property which was transferred to the trust; yet, under the laws of Texas, he was clearly the owner of one-half of the income from the property which he conveyed to the trust so long as he should live. This being the case, we think decedent "retained" the right to one-half of the income from the property which he conveyed to the trust within the meaning of the language used in section 811 (c) above quoted.

The Commissioner in his determination of the deficiency has included the entire value of decedent's one-half interest in the community property which was transferred to the trust. We think this was error. It must be remembered that one-half the property which was conveyed to the trust was conveyed by Mrs. Hinds out of her community one-half interest in the property. It is true that General Hinds was entitled to his one-half community interest in the income from this one-half conveyed by Mrs. Hinds, but it would not be "retained" income from any property which he was conveying. Likewise Mrs. Hinds had a community one-half interest in the income from the property which General Hinds conveyed to the trust. Therefore, we

think that General Hinds "retained" within the meaning of the statute only one-half of the income from the property which he conveyed to the trust. Treasury Regulations 105, section 81.18, above quoted contains this provision:

If such retention or reservation is of a part only of the use, possession, income, or other enjoyment of the property, then *only a corresponding proportion* of the value of the property should be included in determining the value of the gross estate. [Emphasis supplied.]

The Commissioner in his determination of the deficiency has included $71,086.93 as the value of the property which decedent conveyed to the trust. Inasmuch as decedent retained within the meaning of the applicable statute only one-half the income from this $71,086.93 stocks and bonds, we hold that only one-half of such amount of $71,086.93 should be included in decedent's gross estate under the language of section 811 (c) of the code, which we are now discussing.

—Was the Commissioner correct in his determination of the decedent's interest in the homestead property that was includible in the gross estate and of the value of such interest? We think the Commissioner was correct in determining that decedent owned a one-half community interest in this homestead property. We do not think he was correct in increasing the value of such property from $10,000, as reported in the estate tax return, to $15,000, as determined in the deficiency notice. A well qualified real estate expert living in San Antonio, where the property was situated, testified that he was familiar with the property and its location and that its value on the basic date was $10,000. There was no evidence to the contrary. Upon the strength of this testimony we have found that the value of the property was $10,000.

Petitioner contends, however, that in calculating the gross estate there should be deducted from decedent's community half interest the life homestead interest of his wife, Minnie H. M. Hinds, the said homestead interest being a vested life interest which was a burden upon the decedent's community interest prior to and at the time of his death. We think this contention is without merit. The Federal estate tax laws do not contemplate any such deduction. There is nothing particularly unusual about the laws of Texas with respect to the surviving spouse having the right of life occupancy to the homestead property. Many states have laws of a similar nature. The regulations specifically provide that property subject to homestead or other exemptions under local law is includible as a part of the gross estate. See Regulations 105, sec. 81.13. Here the decedent had a vested community one-half interest in the homestead property, which interest was terminated by his death. This community one-half interest is, therefore, includible in the decedent's estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, dissents.

ARNOLD, *J.*, dissenting: In my opinion, by the use in the trust instrument of the language directing the trustee:

\* \* \* to pay the net income from the 1st day of January, 1941, together with any and all accumulations of income, to the said MINNIE H. M. HINDS, during her life, in equal quarterly payments, as nearly as may be; and after the death of the said Minnie H. M. Hinds, and the said Marjorie Hamilton Hinds Cruse shall be living, to pay the said net income of the trust, together with any and all accumulations of income, to the said Marjorie Hamilton Hinds Cruse and John Hamilton Hinds, son of the Settlors, in equal shares, and in equal quarterly payments as nearly as may be; \* \* \*

decedent intended to and did thereby make the trust income the separate property of his wife during her life. That such was his intention is further borne out by the fact that he specifically provided in the trust instrument that it should be governed and construed by the laws of the State of New York. This, in my opinion, clearly shows he completely divested himself of all interest in the trust income under the community property laws of the State of Texas, and that the income of the trust property during the lifetime of the wife was her separate property.

HILL, *J.*, agrees with this dissent.