ESTATE OF WINSTON C. CASTLEBERRY, DECEASED; REPUBLIC NATIONAL BANK OF DALLAS, INDEPENDENT EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8811–75.   Filed August 8, 1977.

*Robert F. Ritchie* and *William B. Adams*, for the petitioner.
*David L. Jordan*, for the respondent.

HALL, *Judge:* Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $148,406.72. Other issues having been disposed of by agreement of the parties, the sole issue remaining for decision is whether the value of gifts from decedent to his wife of his community interest in various bonds is includable in his gross estate, in whole or in part, under section 2036(a)(1)[1] by reason of the post-transfer community property interest which under Texas law he had with regard to income from the transferred property.

### FINDINGS OF FACT

The parties submitted this case under Rule 122, Tax Court Rules of Practice and Procedure. All of the facts have been stipulated and are so found. Those necessary to an understanding of the case are as follows:

Winston C. Castleberry (decedent) resided in Dallas, Tex., prior to his death on September 4, 1971. On September 20, 1971, the Republic National Bank of Dallas, a corporation with its principal office located in Dallas, Tex., was appointed executor of decedent's estate.

At the time of his death, decedent was married to Lucinda R. Castleberry. During their marriage, decedent made gifts to Lucinda of his one-half community interest in several municipal bonds. The fair market value of decedent-transferor's one-half interest in these bonds at decedent's death was $477,155.12. On the Federal estate tax return, petitioner did not include any portion of the value of these bonds in decedent's gross estate. Respondent in his statutory notice determined that the fair market value of decedent's one-half interest in these bonds was includable in decedent's gross estate under section 2036(a)(1).

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect at the time of decedent's death.

OPINION

The sole issue for decision is whether within the meaning of section 2036(a)(1) decedent retained for his life the right to the income from certain bonds held as community property upon the transfer of his one-half community interest in the bonds to his wife. We are presented with this question because, under Texas law, while the transferred property becomes the separate property of the donee-spouse, the post-transfer *income* from the transferred property is community property. *Moss v. Gibbs*, 370 S.W.2d 452 (Tex. 1963); *Arnold v. Leonard*, 273 S.W. 799 (Tex. 1925). Thus, after the transfer, decedent in the present case held a community property interest in the income from the bonds, even though he had not explicitly or implicitly retained such an interest under the transfer instrument. The interest arose by operation of State law.

The identical issue was before this Court on one prior occasion. In *Estate of Hinds v. Commissioner*, 11 T.C. 314 (1948), affd. on other grounds 180 F.2d 930 (5th Cir. 1950), we held that such a transfer fell within the scope of the predecessor of section 2036(a)(1)[2] and that one-half of the value of the decedent's community interest in the transferred property was includable in his gross estate. Respondent appealed our decision, contending that the entire value of the decedent's community interest in the transferred property was includable in his gross estate. The taxpayer in *Estate of Hinds* did not appeal our decision, but, upon respondent's appeal, urged that the decision should be affirmed, not because it was right, but because it gave respondent more

---

[2] Sec. 811, I.R.C. 1939, provided in pertinent part:

SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, * * *

* * *

(c) * * * To the extent of any interest therein of which the decedent has at any time made a transfer * * * under which he has retained for his life * * * (1) the possession or enjoyment of, or the right to the income from, the property * * *

Sec. 2036(a)(1), I.R.C. 1954, provides in pertinent part:

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer * * * under which he has retained for his life * * *

(1) the possession or enjoyment of, or the right to the income from, the property,

* * *

than he was entitled to and he could not therefore complain of it. The Court of Appeals for the Fifth Circuit agreed with the taxpayer, affirmed our decision without approving it, and denied the petition for review, stating (180 F.2d at 932):

We do this upon the authority of the settled law of Texas, that whether the income be regarded as separate property of the wife or as community income from the wife's separate property, the taxpayer retained neither "the possession or enjoyment of, or the right to the income from," the property so as to make applicable Sec. [2036(a)(1)], invoked by the commissioner and in part applied by the Tax Court. [Fn. ref. omitted.]

As a result of the language used by the Fifth Circuit in *Estate of Hinds*, respondent prior to 1975 did not attempt to include in the gross estate of a decedent-transferor under section 2036(a)(1) or its predecessor any part of the value of the decedent's interest in Texas community property transferred to a spouse. See, e.g., *Estate of Wier v. Commissioner,* 17 T.C. 409, 420–422 (1951). In 1975 respondent issued Rev. Rul. 75–504, 1975–2 C.B. 363, wherein he stated he would not follow the dictum of the Fifth Circuit Court of Appeals in *Estate of Hinds*.

Respondent here contends that the entire one-half community interest in the bonds transferred by decedent to his wife is includable in decedent's gross estate under section 2036(a)(1). On the other hand, petitioner contends that none of the transferred property is includable in decedent's gross estate. We disagree with both parties and instead reaffirm the position taken by this Court in *Estate of Hinds* that one-half of decedent's one-half community interest (or one-quarter of the whole value of the bonds) is includable in decedent's gross estate under section 2036(a)(1).

Petitioner raises three arguments in support of its contention that our decision in *Estate of Hinds* is incorrect and that section 2036(a)(1) is inapplicable to transfers of a Texas community property interest by one spouse to the other, where the donor-spouse continues to hold a community property right to the income by operation of State law. Petitioner first maintains that the decedent "retained" no interest in the income from the bonds within the meaning of section 2036(a)(1), since there was no agreement, prearrangement, or understanding, either express or implied, between the donor and donee providing for such retention.

In *Estate of Hinds* we were confronted with the identical contention, and we rejected petitioner's assertion, stating (11 T.C. at 324):

As we have already pointed out, the decedent did not specifically retain or reserve any income from his part of the community property which was transferred to the trust; yet, under the laws of Texas, he was clearly the owner of one-half of the income from the property which he conveyed to the trust so long as he should live. This being the case, we think decedent "retained" the right to one-half of the income from the property which he conveyed to the trust within the meaning of the language used in * * * [section 2036(a)(1)].

We find the reasoning no less valid today and are of the opinion that petitioner has misconstrued the thrust of our decisions wherein we did or did not find an agreement, prearrangement, or understanding that decedent has retained a life interest in the transferred property.[3] Those decisions did not hold that a finding of an implicit or explicit agreement was a precondition to the legal conclusion that a decedent had retained an interest in the transferred property under section 2036(a)(1). Petitioner is correct in noting that in each of those cases the decedent would have had no interest in the transferred property absent an agreement. However, in the instant case such an agreement was unnecessary. By operation of State law decedent held an interest in the transferred property after the transfer. We therefore conclude that section 2036(a)(1) applies where the donor holds an income interest in transferred property by operation of State law as well as where he expressly or impliedly retains the interest under the transfer instrument.

Petitioner's second argument is that even if the decedent "retained" an interest, it was not retained "under" the transfer as required by section 2036(a)(1). This argument is in substance identical to petitioner's first argument that, since the right to the income arose by operation of State law, nothing was retained by decedent. In addressing this identical argument raised under the predecessor of section 2036(a)(1), the Court of Appeals for the Third Circuit stated in *Estate of*

---

[3] *Estate of Linderme v. Commissioner,* 52 T.C. 305 (1969); *Estate of Gutchess v. Commissioner,* 46 T.C. 554 (1966); *Estate of McNichol v. Commissioner,* 29 T.C. 1179 (1958), affd. 265 F.2d 667 (3d Cir. 1959), cert. denied 361 U.S. 829 (1959); *Estate of Wier v. Commissioner,* 17 T.C. 409 (1951).

*McNichol v. Commissioner*, 265 F.2d 667, 670 (3d Cir. 1959), cert. denied 361 U.S. 829 (1959):

This is too constricted an interpretation to place on the statute. The statute means only that the life interest must be retained in connection with or as an incident to the transfer.

We are in agreement with this interpretation of the statute, and, for the reasons previously stated, we conclude that the right to the income was retained under the transfer. Moreover, we are of the opinion that petitioner's reliance on *Estate of Gutchess v. Commissioner*, 46 T.C. 554 (1966), in support of this assertion is misplaced. In that case we were faced with determining whether a decedent-husband had retained a life estate in the family residence incident to its transfer to his wife. We found no agreement, prearrangement, or understanding that the decedent would retain a life interest in the family residence.

We further noted (46 T.C. at 557):

Respondent also makes some argument that under Ohio law (Ohio Rev. Code sec. 3103.04) one spouse cannot be excluded from residence in the other's dwelling except by decree of court, and no such decree was obtained here. It is difficult to see how that would have any bearing here. If decedent had some residence rights granted by Ohio law that would not mean retention of use and enjoyment *"under"* a transfer as required by the statute that is here involved.

We do not think that *Estate of Gutchess* is applicable. In that case, the decedent lived in the residence only at the sufferance of his wife. He would not have been able lawfully to continue to reside in the residence if his wife withdrew her consent. She could, had she chosen to do so, have had him ejected by court order. In this case, however, decedent's right to the community income was not defeasible. His right was not dependent upon the actions or inactions of his spouse. The dictum regarding rights under Ohio law referred, in context, to the mere requirement that an action be brought and a court decree obtained in order to remove the husband. The "requirement" referred to a mere procedural difficulty in the enforcement of the transferee's right to exclude the transferor, not a substantive diminution of the right itself.

Petitioner's final argument is that decedent did not retain "the possession or enjoyment of, or the right to the income from, the [transferred] property," since under Texas law his

wife had the sole management, control, and disposition of the transferred property[4] and was free to deal with the community income from the transferred property without the participation, interference, or consent of the decedent[5] and since the community income was not subject to any debts contracted by decedent.[6]

We disagree and are of the opinion that decedent's wife's control over the transferred property and community income was not absolute and adverse to decedent's interest and was not equivalent to ownership of the community income. See *Commissioner v. Chase Manhattan Bank,* 259 F.2d 231, 239 (5th Cir. 1958), cert. denied 359 U.S. 913 (1959). We note initially that her right of disposition over the transferred property was not an arbitrary one but one held in trust for the benefit of the community. See 3 Simpkins, Texas Family Law, sec. 18.5, p. 218 (5th ed. 1976), 1 Oakes, Speer's Marital Rights in Texas, sec. 365, p. 529 (4th ed. 1961). See also *Commissioner v. Chase Manhattan Bank, supra.* Her control and use of the community income was subject to limitations. For example, decedent or his heir could have brought an action for an accounting, were the community income used to benefit decedent's wife's separate property. See *Dobrowolski v. Wyman,* 397 S.W.2d 930 (Tex. Civ. App. 1965). In addition, her control over the community income could not be exercised in fraud of decedent's rights as by making a gift to a third person. See *Brown v. Brown,* 282 S.W.2d 90 (Tex. Civ. App. 1955). See also 3 Simpkins, *supra* sec. 18.8, at p. 228; 1 Oakes, *supra* at 529.

---

[4] Tex. Fam. Code Ann. tit. 1, sec. 5.21 (Vernon 1975).

Each spouse has the sole management, control, and disposition of his or her separate property.

[5] Tex. Fam. Code Ann. tit. 1, sec. 5.22 (Vernon 1975).

(a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:

* * *

(2) revenue from separate property;

[6] Tex. Fam. Code Ann. tit. 1, sec. 5.61 (Vernon 1975).

(a) A spouse's separate property is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law.

(b) Unless both spouses are liable by other rules of law, the community property subject to a spouse's sole management, control, and disposition is not subject to:

(1) any liabilities that the other spouse incurred before marriage; or

(2) any nontortious liabilities that the other spouse incurs during marriage.

The fact that the community income from the transferred property was not directly subject to the debts contracted by decedent lends no additional support to petitioner's argument.[7] Although the community income was not subject to decedent's debts during the existence of the community, it would be subject to the payment of his debts upon dissolution of the community, at his death or by divorce. See Huie, "Divided Management of Community Property in Texas," 5 Tex. Tech. L. Rev. 623, 628 (1974). See also Tex. Prob. Code Ann. sec. 156 (Vernon Supp. 1976).[8] Moreover, upon dissolution of the community decedent would be entitled to one-half of the then existing community income from his wife's separate property. See *Willcutt v. Willcutt*, 278 S.W. 236 (Tex. Civ. App. 1925), but see Tex. Fam. Code Ann. tit. 1, sec. 3.63 (Vernon 1975).[9] In addition, any property acquired with the community income would retain its community character (see, e.g., *Moss v. Gibbs*, 370 S.W.2d 452 (Tex. 1963)),[10] and one-half of the community income would be includable in decedent's gross income for purposes of Federal income taxation had decedent and his wife filed separate income tax

---

[7] However, the community income derived from the separate property of decedent's wife would be subject to a Federal tax lien for collection of decedent's income tax liability, if such liability exists. See *Broday v. United States*, 455 F.2d 1097 (5th Cir. 1972).

[8] Tex. Prob. Code Ann. sec. 156 (Vernon Supp. 1976), provides:

Liability of Community Property for Debts

The community property subject to the sole or joint management, control, and disposition of a spouse during marriage continues to be subject to the liabilities of that spouse upon death. In addition, the interest that the deceased spouse owned in any other nonexempt community property passes to his or her heirs or devisees charged with the debts which were enforceable against such deceased spouse prior to his or her death. In the administration of community estates, the survivor or personal representative shall keep a separate, distinct account of all community debts allowed or paid in the administration and settlement of such estate.

This provision effective as of Jan. 1, 1972, (4 months following decedent's death) terminates the exemption of community property managed by one spouse from the debts of the other spouse, upon the dissolution of the community at death.

[9] Tex. Fam. Code Ann. tit. 1, sec. 3.63 (Vernon 1975), provides:

Division of Property

In a decree of divorce or annulment the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

[10] The holding in *Moss v. Gibbs, supra,* that when earnings derived from separate property of the wife are converted into other property, that other property is subject to the husband's debts, was overruled by the Texas legislature in 1967. See Tex. Fam. Code Ann. tit. 1, sec. 5.22(a)(4) (Vernon 1975).

returns. *Hopkins v. Bacon,* 282 U.S. 122 (1930). Thus, the essential fact is that while decedent had no direct control over the management of the income, his wife did not have ownership of more than one-half. She "controlled" the husband's one-half only in a fiduciary capacity for his benefit.

In view of these factors, we conclude that decedent's right to the income was not illusory, but an enforceable right sufficient to require inclusion of a portion of the transferred property in his gross estate under section 2036(a)(1).[11]

Respondent asserts that the entire value of decedent's one-half community interest in the bonds should be included in his gross estate because prior to the transfer decedent had a right to one-half of the income from the bonds (which were community property) and after the transfer under Texas law he still had a right to one-half of the income from the bonds (which were then the wife's separate property). Petitioner on the other hand contends that at most only one-half of the value of decedent's one-half community interest in the bonds should be included in his gross estate (or one-quarter of the total value of the bonds), since he retained only a one-half community interest in the income from the portion of the bonds he transferred to his wife.

This identical issue was before this Court in *Estate of Hinds v. Commissioner,* 11 T.C. 314 (1948), affd. on other grounds 180 F.2d 930 (5th Cir. 1950),[12] where we stated at pages 324-325:

---

[11] Petitioner also relies upon *Pearson v. Campbell,* an unreported case (N.D. Tex. 1962, 10 AFTR 2d 6318, 62-2 USTC par. 12, 120), in support of its contention that decedent retained no right to the income. In that case the decedent-husband had purchased various stocks over various years and registered the stock in his wife's name. The stock certificates were kept in her possession and the findings of fact state that the husband never exercised any control over the disposition. It was further found that the decedent intended to make a gift of the stocks to his wife, and in each instance there was a delivery of the certificates. In setting forth its conclusions of law, the court found that the interest of the decedent in these corporate stocks was not sufficient to make it a part of his taxable estate within the meaning of sec. 2036. However, the court did not set forth the reason or any authority in support of its finding. Therefore, we conclude that the opinion in *Pearson* offers little if any support for petitioner's contention.

[12] We are of the opinion that our decision in *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. on the substantive issue 445 F.2d 985 (10th Cir. 1971), does not require us to follow the decision of the Court of Appeals for the Fifth Circuit in *Commissioner v. Estate of Hinds,* 180 F.2d 930 (5th Cir. 1950), in deciding this issue. The *Golsen* doctrine was designed to provide "better judicial administration" and to avoid

we think decedent "retained" the right to one-half of the income from the property which he conveyed * * *

It must be remembered that one-half the property which was conveyed * * * was conveyed by Mrs. Hinds out of her community one-half interest in the property. It is true that General Hinds was entitled to his one-half community interest in the income from this one-half conveyed by Mrs. Hinds, but it would not be "retained" income from any property which he was conveying. Likewise Mrs. Hinds had a community one-half interest in the income from the property which General Hinds conveyed * * * Therefore, we think that General Hinds "retained" within the meaning of the statute only one-half of the income from the property which he conveyed * * *

The only difference between the present case and *Estate of Hinds* is that here decedent transferred the bonds directly to his wife, while in *Estate of Hinds,* the decedent and his wife transferred their community property interests in trust for the benefit of Mrs. Hinds.

Respondent argues that we should reconsider our position in *Estate of Hinds* in light of the opinion of the Court of Appeals for the Ninth Circuit *In re Estate of Bomash,* 432 F.2d 308 (9th Cir. 1970), revg. 50 T.C. 667 (1968), wherein we were reversed with respect to the amount includable in the gross estate.

In *Estate of Bomash,* the decedent's husband had set up a testamentary trust composed entirely of community property. By the terms of his will, 50 percent of the trust income was payable to the wife for life and the remainder was payable to various offspring. About one-half of the trust corpus consisted of the wife's share of the community property, and the other half consisted of the corpus of the husband's share of the community. The wife's share was placed into the trust by means of an endorsement to the husband's will in which she acquiesced in his disposition of the community property. We found that the wife's election to take under her husband's will rather than her statutory share constituted a "transfer" of property within the meaning of section 2036(a) and held that

---

superfluous appeals where a Court of Appeals has decided the particular issue for decision in a manner contrary to the view of this Court. Here the Fifth Circuit did not directly address the issue currently before this Court. Instead it affirmed our decision in *Estate of Hinds* because it felt that respondent received more than he was entitled to receive. We therefore conclude that the *Golsen* doctrine is inapplicable to the present case.

one-half of the value of her one-half community property (one-quarter of the total) was includable in her gross estate.

On appeal, the Ninth Circuit reversed our decision and held that one-half, rather than one-quarter of the trust corpus, was includable in the deceased wife's estate.

In so doing, the Court noted (432 F.2d at 311):

The retention of 50% income from the entire trust corpus (which includes Fannie Bomash's half contribution) is identical *in substance* to a retained *100%* income life estate in her own one-half of the community property. The objective economic reality of this case is the fact that Mrs. Bomash did not alter her position by placing her community property share in trust. We are guided by the Supreme Court's caution in United States v. Grace's Estate, 395 U.S. 316, 89 S.Ct. 1730, 23 L.Ed. 2d 332 (1968) that "the law searches out the reality and is not concerned with the form". Most importantly, we heed the *Grace* Court's clear rule that "the taxability of a trust corpus * * * does not hinge on a settlor's motives, but *depends on the nature and operative effect of the trust transfer*".[2] [Court's emphasis.]

___

[2] United States v. Grace's Estate, *supra*, at 323, 89 S.Ct. at 1734 [quoting from Estate of Spiegel v. Commr., 335 U.S. 701, 709, 69 S.Ct. 301, 93 L.Ed. 330 (1949)] (emphasis supplied).

It is also significant to note that the *Grace* Court found that the settlor "in a very real and objective sense did retain an economic interest while purporting to give away his property." Can we not say that Mrs. Bomash is alleged to have made the same disposition purportedly made in the *Grace* case?

We are compelled to disagree with respondent's position taken in reliance on *Estate of Bomash*.[13] First, such a position ignores section 20.2036–1(a), Estate Tax Regs., which provides:

If the decedent retained or reserved an interest or right with respect to a part only of the property transferred by him, the amount to be included in his gross estate under section 2036 is only a corresponding proportion of the amount described in the preceding sentence.

Decedent *retained* a right to only one-half of the income from his interest in the bonds he transferred to his wife. In addition he was entitled to one-half of the income from his wife's interest in the bonds by virtue of Texas community property law. Respondent ignores these facts when he suggests that decedent in effect retained 100 percent of the income from the interest he transferred in the bonds.

___

[13] We take no position on the Ninth Circuit's reversal of the Tax Court's decision in *Estate of Bomash*.

In addition, *United States v. Estate of Grace,* 395 U.S. 316 (1969), relied upon by the Ninth Circuit in *Estate of Bomash* would be inapplicable to the present case as only decedent made a transfer of property. Unlike *Estate of Bomash,* in this case no reciprocal transfers were made by decedent and his wife which would give rise to invocation of the reciprocal trust doctrine as enunciated in *Estate of Grace.* We therefore conclude decedent retained only one-half of the income from the property he transferred to his wife and only one-half of the value of the property he transferred (or one-quarter of the total value of the bonds) is includable in his gross estate under section 2036(a)(1).

      *Decision will be entered under Rule 155.*
Reviewed by the Court.

TANNENWALD, *J.,* concurring: I agree with the result reached herein solely because (a) I believe that, under *Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. on another issue 445 F.2d 985 (10th Cir. 1971), the respondent's position must be rejected on the authority of *Estate of Hinds v. Commissioner,* 11 T.C. 314 (1948), affd. on this ground 180 F.2d 930 (5th Cir. 1950), and (b) to the extent that the rationale of the Fifth Circuit in *Hinds* indicates that no portion of the transfer should be included, it is dictum and we are not required by *Golsen* to adopt such rationale. Absent *Golsen,* I would adopt the reasoning of Judge Hufstedler in her concurring opinion in *In re Estate of Bomash,* 432 F.2d 308, 313 (9th Cir. 1970), revg. 50 T.C. 667 (1968), and sustain the position taken by the respondent herein.

FAY, *J.,* concurring and dissenting: I fully concur with the majority's conclusion that a portion of the transferred property is includable in the decedent's gross estate under sec. 2036(a)(1). With respect to the proper amount of such inclusion, however, I agree with the reasoning of Judge Hufstedler in her concurring opinion in *In re Estate of Bomash,* 432 F.2d 308, 313 (9th Cir. 1970), revg. 50 T.C. 667 (1968), and would include the entire value of the transferred share in the decedent's gross estate.

FEATHERSTON, *J.*, dissenting: I respectfully dissent. As I view the issue, the reasoning of the Court of Appeals for the Fifth Circuit in *Commissioner v. Estate of Hinds,* 180 F.2d 930 (5th Cir. 1950), dictates a holding that decedent did not retain a right to the income from the transferred bonds within the meaning of section 2036, and I think we should follow that reasoning.

In the *Hinds* case, the husband transferred community property to a trust and provided that the trust income was to be paid to his wife for her life and that the remainder was to go to their children. This Court held in *Estate of Hinds v. Commissioner,* 11 T.C. 314 (1948), that one-fourth of the transferred property was includable in the deceased husband's gross estate on the theory that, within the meaning of the predecessor of section 2036, the decedent had retained the right to the income from that portion of the transferred property. The Commissioner appealed, arguing that one-half, rather than only one-fourth, of the transferred property was includable in the decedent's gross estate. The taxpayer did not appeal but asked the Court of Appeals to affirm this Court's decision, not because it was right, but because "it gave the Commissioner more than he was entitled to." The court agreed with the taxpayer, explaining at page 932:

whether the income be regarded as separate property of the wife or as community income from the wife's separate property, the taxpayer retained neither "the possession or enjoyment of, or the right to the income from," the property so as to make applicable * * * [sec. 2036], invoked by the commissioner and in part applied by the Tax Court.

Speaking for the Court of Appeals, Judge Hutcheson stated that he based this conclusion "upon the authority of the settled Texas law." The law of Texas which he cited was Vernon's Ann. Civ. Stat., art. 4614 (which included a provision that "the wife shall have the sole management, control and disposition of her separate property, both real and personal");[1] *Arnold v. Leonard, 114 Tex. 535, 273 S.W. 799 (1925); Hawkins v. Britton State Bank,* 122 Tex. 69, 52 S.W.2d 243 (1932); *In re Gutierrez,* 33 F.2d 987 (S.D. Tex. 1929); and

---

[1] This Texas statute has been recodified and the new version and related provisions are quoted in fns. 4, 5, and 6 of the majority opinion. This new version does not diminish the wife's rights over the income derived from her separate property.

*Whitney Hardware Co. v. McMahan,* 111 Tex. 242, 231 S.W. 694 (1921).

In one of these cited opinions, one which Judge Hutcheson wrote as a district judge, *In re Gutierrez, supra,* allowing a wife to recover from her husband's bankruptcy estate sums he had contracted on behalf of the community to pay her for services, the holdings of *Arnold v. Leonard, supra; Whitney Hardware Co. v. McMahan, supra;* and other decided cases on the subject are summarized as follows (33 F.2d at 990):

From these decisions it seems plain to me that there are now, roughly speaking, three kinds of property recognized under our marriage laws:

1. The ordinary community property of husband and wife, the management, control, and disposition of which is vested in the husband.

2. The separate property of the wife, the management and control of which is vested in the wife, and

3. That part of the community property consisting of the wife's personal earnings, rents, revenues, etc., from her separate estate, the complete management and control of which is vested in the wife and as to which the wife has full and complete contractual capacity.

As I read this analysis and the cases cited by Judge Hutcheson, they hold that property given to a wife by her husband becomes her separate property. The income from such property is community property, but, consistent with the language of art. 4614, *supra,* the wife has an exclusive right to its management, control, and disposition. Such income cannot be seized by her husband's creditors and, without her consent, cannot be conveyed by him to his creditors. The wife has the sole right to create contractual obligations with respect to such income. She has the right to exclusive possession of the property and the right to dispose of it. In her discretion, she can give it away or invest it in non-income-producing or income-producing property. She is free to deal with the community income from her separate property without the participation, consent, or interference of her husband.

These extensive attributes of ownership led the Court of Appeals in the *Hinds* case to conclude, correctly I believe, that under Texas law a husband who transfers property to his wife does not retain the right to the income therefrom within the meaning of section 2036.

Judge Waller's concurring opinion in the *Hinds* case indicates that he would have limited the court's holding to the situation where the property was transferred, as in the *Hinds*

case, to a trust for the benefit of the wife for her life. To support this view, Judge Waller relied on the rule in Texas that the rents, increase, profits, and the like of property conveyed in trust for the benefit of a wife become her separate property if the trust instrument " 'in the most precise and definite way, and by the use of language of unmistakable intent, make[s] that desire and intention clear.' " See 1 Oakes, Speer's Marital Rights in Texas, sec. 420, p. 622 (4th ed. 1961). But Judge Hutcheson, speaking for the majority, did not so limit the opinion. He stated that the property was not includable in the deceased husband's estate "whether the income be regarded as separate property of the wife or as community income from the wife's separate property." He apparently concluded that, even though the third kind of property described in the above quotation from his *In re Gutierrez* opinion is community property, the husband's rights with respect to it are so limited that they do not constitute a retained right to income within the meaning of the predecessor of section 2036.

The *Hinds* opinion in the appellate court thus supports the conclusion that the decedent in the instant case did not retain the right to the income of the transferred bonds. I would follow that opinion in the instant case and so hold.

DRENNEN, DAWSON, and GOFFE, *JJ.*, agree with this dissent.