SEATTLE TRUST AND SAVINGS BANK, A CORPORATION, AS TRUSTEE UNDER TRUST AGREEMENTS DATED JULY 10, 1940, WITH NORTON CLAPP AND MARY CLAPP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27403. Filed September 21, 1954.

*W. E. Evenson, Esq.*, for the petitioner.
*Wilford H. Payne, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* Respondent determined a deficiency in Federal estate tax and penalty against petitioner as transferee of the estate of Mary Davis Joyce, deceased, in the respective amounts of $353,095.05 and $176,547.53. The penalty was waived by respondent at the hearing.

The sole issue is whether respondent properly included in decedent's gross estate, pursuant to section 811 (c) of the Internal Revenue Code of 1939, one-half of the value at date of death of the corpus of two irrevocable trusts, of which decedent was life beneficiary, which were established in 1940 by decedent and her then husband with securities which formerly constituted their community property. If this was properly included in the estate, the parties have agreed that petitioner is liable as transferee for any unpaid deficiency. If it was not properly included, they have agreed that petitioner is not liable.

All of the facts have been stipulated and they are hereby found. They can be summarized as follows:

Petitioner, a banking corporation organized under the laws of the State of Washington, is authorized to transact a trust business as a corporate fiduciary. Its principal place of business is in Seattle.

---

Mary Davis Joyce, known earlier as Mary Clapp and hereinafter referred to as decedent, died on July 19, 1945. An estate tax return was filed on behalf of her estate with the collector of internal revenue for the first district of California.

Norton Clapp and decedent were married July 3, 1929. On that date, decedent owned no property whatsoever, while Norton Clapp owned a large amount as his sole and separate property. Its value exceeded the value of the property subsequently transferred in trust on July 10, 1940.

On March 29, 1931, Norton Clapp and decedent executed and recorded an "Agreement Fixing Status of Property," which provided that all separate property they had at that time would henceforth be the community property of the parties. On June 4, 1932, they executed and recorded another "Agreement Fixing Status of Property," which provided that all separate property of either party received in the interim should also be deemed community property of the parties.

Between March 29, 1931, and June 4, 1932, Norton Clapp inherited and received substantial additional property of considerable value. Between the date of their marriage and June 4, 1932, decedent acquired no separate property of any kind.

The agreements of March 29, 1931, and June 4, 1932, were honored by the parties throughout the period of their marriage. They filed separate Federal income tax returns for all years on the community property basis, each reporting one-half of the total net income of the community.

On July 10, 1940, decedent and Norton Clapp, in contemplation of a divorce, executed a property settlement agreement and two trust agreements. These agreements were submitted to the Superior Court of the State of Washington for the County of Pierce, which approved the agreements and granted the divorce on July 10, 1940.

The property settlement agreement provided for the custody and support of their children, and for a division of their property rights as follows:

Simultaneous with the signing of this agreement, trust agreements have been entered into. The income from said trust shall be received by Mary Clapp during her lifetime. Said trust agreements are made a part hereof by reference. Said division of the personal effects, payment of cash and life income established by said trusts is the full distributive share of Mary Clapp in all property of the parties.

Norton Clapp shall have all the rest, residue and remainder of the property of the parties, community or separate, as his sole and separate property, free and clear from any claim, right or interest of the community consisting of the parties or Mary Clapp therein.

Norton Clapp and decedent are sometimes designated in the two trust agreements as "Trustors," and petitioner is named as "Trustee."

The terms of the two agreements are the same, except for the securities which are the subject matter of the respective trusts. Each of the trust agreements provides in part:

WHEREAS the Trustors desire to create an irrevocable trust of the property hereinafter described and for the purposes hereinafter set forth, and

WHEREAS all of said property is the community property of the Trustors,

Now, THEREFORE, in consideration of the premises and of the mutual covenants herein contained, the Trustors have granted, conveyed, assigned, set over, and delivered, and by these presents do grant, convey, assign, set over and deliver unto the Trustee, its successors and assigns, all of the personal property and securities listed in Schedule A attached hereto and by this reference made a part hereof.

To HAVE AND To HOLD all and singular the above described property unto said Trustee, its successors and assigns, in trust nevertheless, for the following uses and purposes and subject to the terms and conditions hereinafter set forth:

## I.

Said trust is intended primarily for the benefit of Trustor's wife, MARY CLAPP, during her lifetime and after her death, for Trustor's children, JAMES EBEN HAYES CLAPP, born January 10, 1931, MATTHEW NORTON CLAPP, II., born December 2, 1933, RALPH DAVIS CLAPP, born April 6, 1935, and GARY BALFOUR CLAPP, born September 26, 1939, subject to the terms of this trust agreement.

\* \* \* \* \* \* \*

## XII.

Trustee shall receive, hold, manage, sell, invest, and reinvest said securities and properties constituting the trust estate in the manner hereinbefore provided and shall collect, recover and receive the rent, issues, income and profits thereof and after deducting the compensation of the Trustee hereinafter specified and the proper and necessary expenses in connection with the administration of the trust, shall pay the net income in monthly installments of approximately equal amounts to said MARY CLAPP, or in the event of her incapacity or inability to receive it, for her benefit, during the term of her natural life. Upon her death the trust estate shall be held and disposed of as provided in the next numbered paragraph.

## XIII.

(A) Within a reasonable time after the death of MARY CLAPP, and as of the date thereof, the Trustee shall divide the trust estate into equal units. Such division shall consist of one unit for each then living child of the Trustor and his said wife, and fractional shares totalling one unit for all the living issue, if any, of each deceased child of Trustors, per stirpes and not per capita. Said fractional shares of each unit shall be in a number totalling the number of then surviving children of said deceased child, it being intended that each surviving child shall be entitled to his proportionate share of his deceased parents' unit.

All securities and properties transferred to petitioner as trustee pursuant to these agreements had been held as community property by reason of the agreements of March 29, 1931, and June 4, 1932. Except for the effect of these agreements, they would have been the separate property of Norton Clapp.

The settlement of property rights between decedent and Norton Clapp was carried out in accordance with the property settlement agreement. The total value of the property set aside for decedent, including the value of the corpus of the two trusts, was materially less than the value of the properties relinquished to Norton Clapp in the settlement and materially less than one-half the value of the then community property of the parties.

Norton Clapp and decedent, as trustors in the trust agreements, each filed a donor's return and petitioner filed a donee's return with the collector of internal revenue for the district of Washington. A gift tax of $1,533,121.90 was paid on account of gifts and transfers by decedent in 1940, of which $33,121.90 was paid with decedent's gift tax return on or about March 15, 1941, and the remainder was later paid with interest by Norton Clapp "as donee-transferee." [1] In prior gift tax proceedings, respondent had determined the value of total 1940 gifts by decedent to be $6,000,082.45 and the gift tax liability to be $2,074,728.54, but the amount of such gifts and the amount of tax were disputed by decedent and Norton Clapp, the alleged "donee-transferee." The unpaid deficiency in gift tax liability of decedent for the year 1940 was settled and paid in the amount of $1,533,121.90, as aforesaid, which amounts to the gift tax on gifts aggregating $4,887,128.68. The value of the remainder interest in the properties transferred to the trusts, to the extent included in the determination of the 1940 gift tax liability of decedent, was $233,503.33.

Subsequent to the divorce, decedent married David Joyce. From the time of the establishment of the two trusts until her death on July 19, 1945, decedent received the income from the corpus of each of the two trusts in accordance with the provisions of the trust instruments. The fair market value of the properties held by petitioner as trustee under the two trusts amounted to $2,092,931.56 at the date of decedent's death. Respondent determined that one-half of this amount, i.e., $1,046,465.78, was includible in the taxable gross estate of decedent under the provisions of section 811 (c) of the Internal Revenue Code of 1939.

Norton Clapp is surviving at the time of this proceeding.

Respondent ignores in quotation and discussion the only statutory provision upon which petitioner relies. That is the 1942 amendment to section 811, Internal Revenue Code of 1939, which enacts "for the purposes of * * * section 811 (c)" that "*a transfer* of property *held as community property* by the decedent and surviving spouse * * * shall be considered *to have been* made by the decedent, except such part thereof as may be shown to have been * * * derived originally from

---

[1] So designated in the stipulation.

\* \* \* separate property of the surviving spouse." [2] (Emphasis added.) The provision obviously refers to inter vivos transfers and speaks in relation to the date the transfer took place. At that time, this property was concededly "community property" and decedent's husband was her "spouse." Had he not survived her, the present question could never have arisen.

When, accordingly, respondent affirms in his reply brief that "upon decedent's death in 1945 there was no community property insofar as decedent and Mr. Norton Clapp were concerned, upon which the statute could operate" and that "Mr. Clapp \* \* \* was not her 'surviving spouse' as contemplated by \* \* \* the Revenue Act of 1942 \* \* \* so the statute upon which petitioner relies has no application," he is apparently referring to a different provision, section 402 (b), the only one he quotes, which does apply to community interests, but to those held at death and not those transferred inter vivos.[3]

The provisions in question were in effect only from 1942 to 1948, but they apply in terms to the estates of all decedents dying during that period.[4] Both the legislative history[5] and respondent's own

[2] Revenue Act of 1942 :

SEC. 402. COMMUNITY INTERESTS.

(a) TRANSFERS OF COMMUNITY PROPERTY IN CONTEMPLATION OF DEATH, ETC.—Section 811 (d) (relating to revocable transfers) is amended by adding at the end thereof the following new paragraph :

"(5) TRANSFERS OF COMMUNITY PROPERTY IN CONTEMPLATION OF DEATH, ETC.—For the purposes of this subsection and subsection (c), a transfer of property held as community property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, shall be considered to have been made by the decedent, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse."

(b) GENERAL RULE.—Section 811 (e) (relating to joint interests) is amended as follows :

(1) By striking out "(e) JOINT INTERESTS.—" and inserting in lieu thereof

"(e) JOINT AND COMMUNITY INTERESTS.—

"(1) JOINT INTERESTS.—"

(2) By inserting at the end thereof the following new paragraph :

"(2) COMMUNITY INTERESTS.—To the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. In no case shall such interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition."

[3] See footnote 2, supra.

[4] Revenue Act of 1948 :

SEC. 351. REPEAL OF COMMUNITY PROPERTY ESTATE TAX AMENDMENTS.

(a) Effective with respect to estates of decedents dying after December 31, 1947, sections 811 (d) (5), 811 (e) (2) and 811 (g) (4) of the Internal Revenue Code (relating to community property) are hereby repealed.

[5] S. Rept. No. 1631, 77th Cong., 2d Sess. (1942-2 C. B. 504, 673, 674) :

The corresponding section of the House bill amended only section 811 (e) of the Code relating to joint interest. \* \* \* A new paragraph (5) is added to section 811 (d), providing that for the purposes of section 811 (c) and (d), a transfer of property held as community property \* \*. \* [etc.]

regulations⁶ confirm this view. Had decedent and Norton Clapp remained married until the former's decease, and had there been no transfer, then 402 (b) would have been expressly relevant. Yet only because of the further provision of that subsection relating to rights of testamentary disposition would the property be taxable in decedent's estate.

Now suppose the parties had remained married, but the property was transferred exactly as it was here. In that situation, respondent appears to concede that the estate tax would not apply if no part of the property was derived from decedent.⁷ This is so both because decedent retained no rights of testamentary disposition and, although respondent does not say so, because 402 (a), amending 811 (d) and applying to 811 (c), contains no similar provision as to disposition by will.⁸

Nevertheless, respondent feels free to argue "it is obvious that Congress intended by amendment of section 811, Internal Revenue Code of 1939, to extend and strengthen the estate tax provisions of the statute. Yet if petitioner's anticipated position be adopted then the portion of trust property contributed by her * * * would escape taxation entirely * * *. Clearly it would not be includible in Mr. Clapp's estate upon his subsequent death, *as is demonstrated by the similar cases discussed above on that point.*" (Emphasis added.)

First, only the *Hinds* case⁹ was similar, in that it was an estate tax case. But there, decedent died before 1942, hence there is no "demonstration" that under the legislation involved here the property would escape tax in the husband's estate. Second, there is no possibility of avoiding the conclusion that under the state of facts last assumed section 402 would apply,¹⁰ yet, equally, the property would escape taxa-

---

The amendments thus make due provision for the exclusion from the gross estate of that portion of the community property which is economically attributable to the survivor. See also H. Rept. No. 1274, 80th Cong., 2d Sess. (1948–1 C. B. 241, 283).

⁶ Although respondent quotes only section 402 (b), Revenue Act of 1942, his regulations (105, sec. 81.15; T. D. 5239, 1943 C. B. 1084) speak "In the case of estates of decedents dying after October 21, 1942" of "a *transfer* to a *third party* * * * of property *held* as community property by the *decedent* and *spouse*" and declare that it "shall be considered, in accordance with section 811 (d) (5), as added by section 402 (a) of the Revenue Act of 1942 * * * to have been made by the decedent, except such part thereof as may be shown to have been * * * derived originally from * * * separate property of the spouse. The same statutory provisions apply in the case of a division of such community property between the decedent and spouse into separate property * * *." (Emphasis added.)

⁷ Otherwise, it is difficult to see that it would ever have any application.

⁸ "The last sentence of the amendment to section 811 (e) relating to property over which decedent has power of testamentary disposition, does not appear in 811 (d) because it deals with inter vivos transfers, and at the death of the transferor there will not be any property over which the deceased transferor holds power of testamentary disposition." 31 Calif. L. R. 60, 62.

⁹ *Estate of Ernest Hinds,* 11 T. C. 314, affd. (C. A. 5) 180 F. 2d 930.

¹⁰ This is apparently, if tortuously, conceded by respondent when he says "* * * unless the marital status of the spouses making the transfer continues to date of death of one of them, the provisions of the amendment are inapplicable. * * *." Resp. reply br., p. 9.

tion. But if that is clear it is only because Clapp survived the period of applicability of the 1942 amendments. Revenue Act of 1948, section 351 (a), *supra*, footnote 4.

Whether or not the repeal of the 1942 amendments in 1948 will have the effect of ultimately releasing the husband's estate from liability for these transfers we need not and do not decide. If so, we must presume it to have been the congressional purpose that by an accident of timing the property here involved may escape tax. It offers no justification for failing to follow the clear language and obvious purpose of the only legislation under which the present situation falls.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

MURDOCK, *J.*, concurs in the result.