[Civ. No. 487. Fourth Appellate District.—March 11, 1931.]

In the Matter of the Estate of FRED J. WYSS, Deceased. DORA WYSS, Appellant, v. FIRST NATIONAL TRUST AND SAVINGS BANK OF SAN DIEGO (a Corporation), Executor, etc., et al., Respondents.

Glen H. Munkelt for Appellant.

James G. Pfanstiel and Harrison G. Sloane for Respondents.

BARNARD, P. J.—This is an appeal from an order in a probate proceeding denying the petition of the widow of the decedent to have set aside to her a probate homestead. Fred J. Wyss died on April 19, 1928. His will was admitted to probate on May 11, 1928. In this will, dated July 11, 1925, the testator devised and bequeathed to a named trustee "all of my property both real and personal of whatsoever kind or character and wheresoever situated," to be held in trust upon certain conditions which need not be here fully detailed. In general, it may be said that under the trust provisions the net income of the estate was to be paid to decedent's wife and daughter, $250 per month to the wife, $100 per month to the daughter, and the entire balance of the net income to the wife, the $250 monthly payment to the wife having a priority over any payment to the daughter. The will also provided that in the event of the death of both the wife and the daughter, without the daughter leaving issue, then one-half of the entire estate should go to the legal heirs of the wife and the other half to the legal heirs of the testator. The will then contained a paragraph reading as follows:

"Sixth: The provisions herein made for and the property herein given to my said wife, Dora Wyss, are, and shall be, taken by her in lieu of all her rights, claims and assets given to her by law, in our community property, if any there be, and in my separate estate as my surviving widow."

There was attached to this will, following the attestation clause and the signature of the witnesses, and as a continuation of the same document, the following instrument:

"I, Dora Wyss, the wife of said Fred J. Wyss, the maker of the foregoing will, having read it in its entirety, and clearly understanding that my said husband by his will disposes not only of all of his separate estate, but also all of our community property, in case there is any such, including the share thereof which I am entitled to take and receive by law upon his death, as well as his own share or interest therein, being fully convinced in my own mind of the reasonableness and equity of said will and the wisdom of its provisions, and in consideration of the provisions made for me therein, I hereby elect to and do accept, acquiesce in and consent to said will and all of its provisions, including disposition at the death of my said husband of all of our community property thereunder, and hereby waive all claims to my share of any community property, and any and all other claims, rights, interests and estates which I may have at the time of the demise of my said husband, upon or in all of his separate property and all of our community property, including all of his property exempt from execution and my right to a probate homestead, but not including, however, and expressly excepting therefrom my right to a family allowance out of the estate of my said husband during the probate administration thereon, and I hereby accept such of the said provisions of said will as apply to or concern me, except as above expressly excepted.

"In Witness Whereof, I have hereunto set my hand seal this 11th day of July, 1925, at the City of San Diego, County of San Diego, State of California

"DORA WYSS.

"On this 11th day of July, 1925, at San Diego, State of California, the said Dora Wyss, wife of said Fred J. Wyss, signed and executed the foregoing instrument in our pres-

ence, declaring that she did so freely and voluntarily in token of her acceptance of the provisions of and her assent to the will of her husband and her waiver of all her rights, claims and estate in both their community property and the separate property of her said husband.

"Laurence H. Smith Residing at 306 Prospect Street, San Diego, California.

"James G. Pfanstiel Residing at 1333 7th St. San Diego, California."

On May 4, 1929, the widow filed a petition to have set apart to her a probate homestead, which petition contained the following:

"That on or about the 11th day of June, 1925, your petitioner signed a document attached to the Last Will and Testament of said Fred J. Wyss; that petitioner is informed that said document is a waiver of her community interest in the estate of Fred J. Wyss and waives her right to a probate homestead.

"That said petitioner did not intend to waive her claim to a probate homestead at the time she signed said purported waiver, and did not understand that she was waiving her right to a probate homestead at the time she signed said purported waiver; that petitioner does not wish to be bound by said purported waiver, and for that purpose renounces and repudiates said waiver."

The respondent executor filed its answer and objection to this petition, which included the following:

"Admits that on the 11th day of June, 1925, petitioner, Dora Wyss, signed a document attached to the Last Will and Testament of said Fred J. Wyss; admits that said document is a waiver by the said Dora Wyss of her community interest in the estate of Fred J. Wyss, and is likewise a waiver of her right to a probate homestead.

"Denies that the said petitioner, Dora Wyss, did not intend to waive her claim to a probate homestead at the time she signed said purported waiver, and denies that she did not understand that she was waiving her right to a probate homestead at the time she signed said waiver.

"Your objector is informed and believes, and upon that ground alleges, that the said Dora Wyss at the time she signed said waiver of probate homestead fully understood

the entire contents of said waiver of homestead, and was completely advised as to the legal effect and purport of said waiver.''

Upon the issues thus raised a hearing was had, and thereafter, on the sixteenth day of August, 1929, an order was entered denying said petition, from which order Dora Wyss, the widow, is prosecuting this appeal.

Appellant contends that she did not read the said waiver, nor was it read to her; that she did not know she was waiving her right to a probate homestead, and did not know the effect of said waiver; that the effect of said waiver is nothing more than an expression of her willingness to have taken under the will as of the date the waiver was signed; and that at any time up to the distribution or until she has so conducted herself toward the property of the estate as to be estopped, she may change her election and elect to take under the law.

█ The first question raised is whether or not appellant understood what she was signing at the time it was signed. The record shows that the evidence upon this point, while conflicting, is ample to sustain the conclusion of the trial court that she knew what she was signing. That particular point may be taken as settled.

The next and most important question presented is the effect of the instrument itself. █ The entire will and waiver must all be read together. (*Estate of Whitney*, 171 Cal. 750 [154 Pac. 855, 857].) From such a reading, as well as from surrounding circumstances, it is fully apparent that it was the intention of the parties at the time to dispose of and provide what should be done with all of the community property belonging to the parties thereto. In the case just cited the court said:

''The paper signed by Mrs. Whitney was attached to the will, and it evidently was the paper referred to in the preamble of the will as 'the written consent and acceptance of my wife Lucy.' We have no doubt that, as is urged by the appellants themselves, the will and this waiver are to be read together. Such a reading clearly shows what the husband and wife had in mind, and what they were undertaking to deal with in the drafting and execution of the two documents.''

■ In the will before us, the testator first gave to a trustee all of his property "of whatsoever kind or character." He was then the "owner and entitled to the possession of all of the community property". (*Estate of Dargie*, 179 Cal. 418 [177 Pac. 165].) In the sixth clause of the will the testator set forth that the provision he had made for his wife, referring to the trust provisions which included his business as well as other property, should be taken by her in lieu of all her rights in their community property, and also in his separate estate. Not only does this refer in express terms to any community property there was, but the waiver signed by the wife clearly refers to the fact that she understands he is disposing in his will, not only of his separate estate, but also of their entire community property; and in consideration of the provisions made for her she accepts and consents to the will, including its disposal of all of the community property, and she specifically waives any claim to her share of any community property, including her right to a probate homestead. Not only does the language used show that the intention of the parties was to provide for the disposition of all of the community property, but this is also shown by appellant's testimony. She said she had read the will and she does not yet raise the question that she did not understand that, including the sixth paragraph thereof. It appears from her testimony that she discussed the will with the deceased at the attorney's office in the forenoon of the day it was executed. She testified that at that time she suggested that "at the end of the will it was left rather vague, if my daughter should die without issue, and I did think it should go to my heirs. I didn't think that was quite fair and I suggested that it be put down definitely, it should be divided between the heirs on both sides. Then we went out for lunch." She then testified that after lunch they returned to the lawyer's office, where the instrument was executed, it having been changed in the meantime, in accordance with her suggestion. It is difficult to reconcile this testimony with appellant's present claim that she then thought that the will referred only to the testator's share of the community property. She further testified that she and her husband talked the will over at lunch time, and that in reply to her question as to why he wanted to give it all to a trust company, he gave as one

reason, that it would ruin the factory and business to close it down for a year, and that she concurred in that view. This business constituted a large part of the estate at that time, and this evidence is hardly consistent with the idea that the parties then considered the will as referring to the husband's share in the community property.

A further consideration is the certificate attached to this waiver, signed by two of the same witnesses who had witnessed the attached will, in which it is stated that the appellant signed the waiver in their presence, declaring that she did so freely, in token of her acceptance of, and assent to, the will, and of her waiver of all claim to both their community property and the separate property of her husband. We think there can be no question that the effect of this instrument, so far as intended by the parties at the time, was that it should constitute a waiver as to all right of appellant in and to the community property of herself and her husband, including a probate homestead; that by its execution she was consenting to the making of a will by her husband, which disposed of all of their community property as well as his separate property; and that she was accepting the provisions made for her in this will in lieu of what would otherwise have been, under the law, her rights in the property.

The only remaining question is as to whether this instrument, entered into with such intentions and under these circumstances, is binding and controlling upon the appellant, or whether she may at any time before distribution change her mind and elect to take under the law, rather than under the provisions of the will. A husband and wife may legally come to an agreement or enter into a transaction concerning their community property. (*Estate of Sloan,* 179 Cal. 393 [177 Pac. 150]; Civ. Code, sec. 159.) No good reason appears why this could not be done in this case, nor why it could not include a waiver or relinquishment of a right to a probate homestead. The will and the waiver must be considered together, and we think they are contractual in their nature. Even one writing may be both a will and a contract. (*Norton* v. *Estate of Norton,* 41 Cal. App. 614 [183 Pac. 214].) While the instrument attached to this will was a waiver, it was also both a consent and an agreement. In the sixth paragraph of the will the testator

states that the provisions made in the will for his wife are and shall be taken by her in lieu of her general legal rights in their community property. In her waiver the wife states "I hereby elect to and do accept, acquiesce in and consent to said will and all of its provisions . . . and hereby waive all claims to my share of any community property", including her right to a probate homestead. This is not an agreement to do something in the future, but indicates a present agreement. Both the written instruments and the surrounding circumstances indicate a complete and completed plan for the disposition of their community property, in the event of the death of the testator. Whether or not the parties themselves could later have changed this plan, by agreement, or whether some subsequent act by one of the parties might have released the other, is not determinative of whether or not the wife is bound after the death of the husband, the event in contemplation of which the instruments were made, nothing having been done by the parties in the meantime. As was said in the case of *Estate of Whitney, supra;*

"Here, then, we see that the parties executed writings in which they declared plainly that they were making arrangements and stipulations for the purpose of enabling the husband to dispose of the entire community property and of binding the wife to assent to such disposition. The husband was asserting his intention to devise and bequeath the half of the community property which would pass to his wife if she survived him. She was consenting to such disposition and waiving her right to object thereto. . . . "

In that case the will and an instrument attached thereto were very similar to those in the case at bar and the language used in that opinion indicates that the court viewed the two instruments as contractual in nature. In the case before us, even if the attached instrument be considered a waiver, it is one made upon an expressed consideration and the combined instruments appear to us to have the effect of a contract.

In stating her contentions appellant urges that she had the right to change her election and elect to take under the law, rather than the will, at any time prior to distribution or until such time as she had conducted herself towards the property in a manner to estop her from so doing. We think she was estopped from denying the validity of the instru-

ment she signed. If this was not true at the time the instrument was signed, it became true when she permitted the situation to remain unaltered until the death of her husband. He was lulled into a sense of security, believing he had made an adequate provision for those dependent upon him.

"Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., sec. 1962.)

He was led to change his position in reliance upon her waiver and consent, and the provision he made for his daughter must be very greatly changed if the waiver here involved is set aside. The husband had the right to provide for his daughter to the extent of his share of the community property, which, in this case, was half of the estate; and in giving up this right in reliance upon the promise of appellant, he intended another result, which was approximately equivalent to the right given up, and to now permit the widow to set aside the waiver would alter his position to his prejudice and the prejudice of his heirs. At the time of the husband's death, through this promise and waiver, the appellant received a vested right to all of the income from the entire estate, under some circumstances, and under any circumstances to all of this income except $100 per month. Of course, as a general rule, a widow is not required to make her election in advance as to whether she will take under a will or under the law, but in the case of *Dunne* v. *Dunne,* 66 Cal. 157 [4 Pac. 441, 442, 1152], the court says: "But this rule, like all other general rules, should be applied only when it is reasonable to apply it, and when its application will promote, not defeat, justice."

In the present case, the appellant had already exercised her right of election, and it would neither be reasonable nor just to apply a rule which would be proper in a case where a husband made a will in which, without the consent of his wife, he undertook to dispose of their community estate. We think the appellant has so dealt with the property of this estate that she may not now set aside the election she made upon a definite consideration, and that she may not now make another election, when it is too late for the hus-

band to protect the interests of himself and his heirs. As was said in the case of *In re Whitney, supra:*

"The soundness of this claim involves an inquiry into the true meaning and intent of the writing. It is of no great consequence whether the instrument be viewed from the standpoint of contract, of waiver, or of estoppel. In any aspect its operative effect, as against the right here claimed by the widow, must depend upon an interpretation of its terms."

The effect of the waiver here in question not only depends upon an interpretation of its terms, but we think that, properly interpreted, it must be held to bind the appellant.

In our opinion every equitable consideration is in favor of enforcing the arrangement which these parties made in good faith. Not only was the arrangement an eminently fair one, but the purpose of the combined instrument was one entire plan, which covered all of the community property of the parties. If the purpose and intent of the arrangement is thwarted and changed, it not only leaves a situation contrary to the intention of the testator, but unjust to him and his heirs. If such a situation be brought about by operation of law, not only would the deceased, through his reliance upon the consent and agreement of the appellant, be deprived of an opportunity to make a different and a better provision for his daughter and his other heirs, but his widow would secure the resulting profit by repudiating her own agreement. In our opinion the appellant not only ought to be, but is, bound by the instrument she signed.

Appellant further contends that even if the waiver is binding upon the appellant it could not be considered by a probate court, but that when the jurisdictional facts required by section 1465 of the Code of Civil Procedure appear, a probate court has nothing to decide, but must set apart a homestead. We are unable to agree with this contention. The right to a probate homestead is not only not a vested one, but is a privilege, the validity of which is to be determined from the conditions that exist at the time the application is made. (*Estate of Pillsbury*, 175 Cal. 454 [3 A. L. R. 1396, 166 Pac. 11].) In passing upon a petition for such a homestead it was the duty of the court to consider not only the status of the petitioner and the nature

of the property, but whether or not the probate homestead had been waived by the petitioner.

The order is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 27, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 4, 1931.