ESTATE of Julia Crawford HORNOR, F. Raymond Wadlinger and Caleb W. Hornor, Executors, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13855.

United States Court of Appeals
Third Circuit.

Argued May 8, 1962.

Decided June 29, 1962.

George Craven, Philadelphia, Pa. (Kenneth W. Gemmill, F. Raymond Wadlinger, Philadelphia, Pa., on the brief), for petitioners.

Loring W. Post, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys.,

Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before McLAUGHLIN, STALEY and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The taxpayer estate seeks review of a decision of the Tax Court which found a deficiency.

The material facts are not in dispute. Decedent died on May 29, 1954 a resident of Philadelphia County, Pennsylvania. Her husband, William, died on January 18, 1937 a resident of Delaware County, Pennsylvania. Prior to his death, he had acquired under his mother's will and by purchase 107 parcels of land located in Philadelphia and Delaware Counties. Over a period of nine years commencing in 1925, he transferred all of these parcels to his wife and himself as tenants by the entirety. The wife, Julia, paid no part of the cost of acquiring any of the parcels and no valuable consideration for the transfer into their joint names. On December 31, 1935 they conveyed all of the property to themselves and Peter T. Hornor, one of their four sons, as trustees. The deed of trust provides that the net income be paid to William and Julia "jointly for and during the term of their joint lives or until they revoke this trust * * *, and if said trust has not been revoked, on the death of one or the other of them, to pay the said income to the survivor of them for and during the term of his or her life." Subsequent disposition of the principal and income of the trust are not involved in the present problem. The deed of trust further provides that the settlors could revoke the trust and revest the corpus jointly but not severally until the death of either (i. e. the first to die), at which time the trust would become irrevocable.

After William's death, litigation arose over the respondent's assertion that the value of all of the entirety property was includible in William's gross estate and respondent's consequent notice of deficiency. In Hornor's Estate v. Commissioner, 3 Cir., 130 F.2d 649, 651 (1942), we held that "the transfer to the trustees by the indenture of December 31, 1935, was squarely within the provisions of Section 302(e) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Code § 811(e) and, therefore, the value of the properties held in trust following the transfer of 1935 was properly includible within" William's estate.

Julia died testate. No part of the value of the property was included in her gross estate in the estate tax return. The respondent, however, determined that 68.490 per cent of the value at the time of her death should have been included and asserted a deficiency. The 68.490 per cent was arrived at on the basis of actuarial computations as to the value of Julia's interest in the entirety property at the date the trust was created; Julia was approximately 9½ years younger than William. The Tax Court sustained the Commissioner's contentions regarding the inclusion of the wife's interest in her gross estate but, citing Estate of A. Carl Borner, 25 T.C. 584 (1955), held that this should only comprise one-half of the value of the trust property.

Petitioners take the position that this court's decision holding that the value of all the trust property is includible in William's gross estate as property for which full consideration was furnished by the decedent, see § 811(e) of 26 U.S. C.A. Int.Rev.Code, § 302(e) of the Revenue Act of 1926, precludes a finding that the value of any part of that property is includible in Julia's estate under § 811 (c) of the 1939 Code. More particularly, petitioners argue that "The full value of the trust property has been taxed in Mr. Hornor's estate as a transfer of part of his estate at death"; that if "Mr. Hornor's death effected a transmission of 100 per cent of the property by him", it is "harsh and fanciful" to conclude that it also "effected a transfer of an additional 50 per cent of the property by Mrs. Hornor"; and that "Mrs. Hornor did not at any time have the ownership of the property or the right to transfer any part of

it, and a transfer effected by Mrs. Hornor's death could not be said in any sense to be a voluntary transfer by Mrs. Hornor" of her interest. This latter theory is based upon Pennsylvania property law to the effect that a tenant by the entirety has nothing more than a mere expectancy which cannot be severally conveyed during the spouse's lifetime and which, in the instant situation, "was never brought into fruition but was extinguished by Mr. Hornor's death."

■ Section 811(e) requires the inclusion in a decedent's gross estate of the full value at death of all property owned by the decedent and his spouse as tenants by the entirety so long as the property or consideration therefor was furnished wholly by the decedent. See United States v. Jacobs, 306 U.S. 363, 59 S.Ct. 551, 83 L.Ed. 763 (1939). So, if William had merely transferred his property into a tenancy by the entirety without the further step of creating with Julia a trust, not only would the value of all the property have been includible in William's gross estate, but, subject to qualifications unimportant here, the value of all the property would also be includible in Julia's gross estate, she being the survivor and owner of the fee. The creation by the spouses of a trust wherein they continued to enjoy the fruits of the property, retaining jointly the power to revoke the trust and revest the corpus, could not lessen the force of § 811(e) requiring the inclusion of the value of all the property in William's gross estate. In effect, William was still a tenant by the entirety of property furnished wholly by him. This was the plain import of our decision in Hornor's Estate v. Commissioner, supra. However, piercing the creation of the tenancy by the entirety and the creation of the trust for estate tax purposes does not necessarily mean that those conveyances have no legal effect. In point of fact, Julia acquired an interest by the conveyance from William, be that only an expectancy under state law. While she could not severally convey that expectancy, she could not be forced into joining with William in the creation of a trust wherein she transferred her interest in the entirety property. That was her voluntary act. Moreover, during William's lifetime, she retained the power, acting jointly with him, to revoke the trust and revest her interest.

■■ Petitioners urge that the conveyance by William to Julia should be ignored in computing her gross estate the same as it was ignored in computing his gross estate; that the facts should be viewed as if William alone conveyed all the property into trust making Julia a joint income beneficiary during his life and the exclusive income beneficiary after his death, but not a settlor of the trust. Therefore, petitioners state, no part of the corpus is includible in Julia's gross estate. But this overlooks the all important fact that the reason for going behind the conveyances by William, namely, that he was (despite the ineffectual trust which was revokable during his lifetime) a tenant by the entirety of property wholly furnished by him, has no connection with the computation of Julia's gross estate under an entirely different section of the Code. William did convey an interest in the property to Julia; the trust did become irrevocable after William's death. Actually, William's death fostered two independent consequences. First, it resulted in a testamentary disposition of all the property which he conveyed to Julia and then, with her, into the trust revokable during his lifetime. Second, because the trust became irrevocable during Julia's lifetime at William's death, that event resulted in an inter vivos disposition of Julia's interest in the property with Julia still retaining for her life the fruit of the corpus. Insofar as Julia's estate is concerned, this second consequence falls squarely within § 811(c) of the 1939 Code which provides:

"(c) Transfers * * * taking effect at, death

"(1) General Rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona

fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\* \* \* \* \* \*

"(B) under which he has retained for his life \* \* \* (i) \* \* \* the right to the income from, the property \* \* \*."

There is no requirement in this section that a decedent have had at one time or other complete ownership or "unfettered control" over property before it can be included in the decedent's gross estate as petitioners suggest. The operation of the section to the extent material, is based upon the transfer of any interest in real property which the decedent has made at any time, into a trust or otherwise, while retaining the right to the income. The assertion that "if Mrs. Hornor had died first, nothing would have been includible in her estate \* \* \*", with the conclusion that she had nothing to transfer under § 811(c), confuses § 811(c) with § 811(e). If Julia had died first, there would have been no addition to her gross estate because she did not furnish either the property or the consideration for it. See § 811(e). Section 811(c) has no relevancy to the petitioners' example, there being no indication in that example of an attempt by Julia to transfer anything before she died.

In the light of the above we have re-examined our opinion in 3 Cir., 130 F.2d 649 requiring the inclusion of the value of all of the property in Mr. Hornor's gross estate. We are satisfied that under the facts and law it is entirely sound. This disposes of petitioners' argument for equitable recoupment as to taxes paid on that estate.

Since neither petitioners nor respondent contend that a figure other than 50 per cent of the property is includible in Julia's gross estate, assuming some percentage is includible, no discussion of this point is indicated. See Estate of A. Carl Borner, supra.

The decision of the Tax Court will be affirmed.