[Civ. No. 33085. Second Dist., Div. Four. Mar. 24, 1969.]

Estate of HOWARD CUNNINGHAM, Deceased. HOUSTON I. FLOURNOY, as State Controller, Petitioner and Appellant, v. HORTENSE CUNNINGHAM et al., Objectors and Respondents.

Joseph D. Lear, Walter H. Miller, and Phyllis Kelly Fairbanks for Petitioner and Appellant.

Walker, Wright, Tyler & Ward and Shirley C. Ward, Jr., for Objectors and Respondents.

KINGSLEY, J.—Howard Cunningham, a resident of Pasadena, died testate on September 24, 1965, survived by his

wife, Hortense, and three adult children. At the time of his death he left both separate and community property, the clear market value of which was as follows:

| | Total | Total Community Property of Decedent and Wife | Total Separate Property of Decedent |
|---|---|---|---|
| Probate | $1,142,920.91 | $923,767.28 | $219,153.63 |
| Less Encumbrance | (23,316.54) | | (23,316.54) |
| Less Other Deductions | (35,670.87) | (28,831.02) | (6,839.85) |
| Net | $1,083,933.50 | $894,936.26 | $188,997.24 |

The clear market value of decedent's half of the community property was $447,468.13.

As of the date of Mr. Cunningham's death, the law applicable to the taxation of transfers of community property was contained in sections 13551 and 13552 of the Revenue and Taxation Code,[1] which sections read as follows:

"§ 13551. Death of husband

"Upon the death of a husband:

"(a) At least one-half of the community property is subject to this part.

"(b) The one-half of the community property which belongs and goes to the surviving wife pursuant to Section 201 of the Probate Code is not subject to this part.

"(c) All of the community property passing to anyone other than the wife is subject to this part."

."§ 13552. Death of husband; wife's election to take under will

"When a husband by a will making a testamentary disposition of the community property forces his surviving wife to elect whether to share in his estate under the will or to take her one-half of the community pursuant to Section 201 of the Probate Code, and she elects to take under the will, the property thus taken up to a value not exceeding one-half of the value of the community is not subject to this part."

Decedent's will provided:

"SECOND: . . . I further declare that I intend by this Will to dispose of not only my separate property, but likewise,

---

[1]By Statutes 1965, chapter 1070, section 13551 was amended and section 13552 was repealed. But those changes do not affect the taxes due in the Cunningham estate.

*with my wife's approval and consent, of all of the community property.*

"THIRD: I hereby give, devise and bequeath, in equal shares to my three children above named [Howard A. Cunningham, Marie Cunningham Jones, and David Edward Cunningham], or to their issue by right of representation if any of them be deceased at the time of my death, *one-half of my* community property and all of my separate property. . . .

"FOURTH: All of the rest, residue and remainder of my estate, both real and personal and wheresoever the same may be situate, I give, devise and bequeath to my wife, HORTENSE CUNNINGHAM, if living, IN TRUST, nevertheless, for the following uses and purposes, to-wit:

"*The net income from the Trust Estate shall be paid* in quarterly or other convenient installments *to my wife for and during her lifetime.*" (Italics added.)

The will further provided that the remainder was to go to the children of deceased and his wife, or to the issue of the children.

Attached to the will was a document, bearing the same date as the date of execution of the will, signed by the wife and reading as follows:

"APPROVAL OF WILL

"The undersigned, HORTENSE CUNNINGHAM, wife of HOWARD CUNNINGHAM, the Testator in the attached Will, has read the Will of HOWARD CUNNINGHAM, and approves the same and each and all of its terms, and consents to the disposition of the community property made by HOWARD CUNNINGHAM under said Will, and agrees to be bound thereby."

Ultimately, the executrix filed in the probate proceedings her "First Account Current, Report of Executrix, Petition for Allowance of Fees to Attorneys and Accountants, for Instructions and for Preliminary Distribution." That matter came on for hearing under a procedure whereby the Controller consented to its granting but under a reservation whereby such action would not bind the Controller when the inheritance taxes were fixed.

The trial court found that: ". . . the proper interpretation of decedent's Will is that all of his estate, in which he includes his wife's one-half interest in their community property, is divided into two parts: *Part one,* to decedent's children under Paragraph THIRD, consisting of two components, (a) all of decedent's separate property and (b) *one-half of*

*his one-half* interest in their community property; and, *Part two,* to decedent's wife, in trust, under Paragraph FOURTH, consisting of two components, (a) *the other one-half of decedent's one-half* interest in their community property and (b) all of decedent's wife's one-half interest in their community property; . . .'' (Italics added.)

Pursuant to that finding the court ordered the property distributed accordingly. The inheritance tax appraiser determined that each of the three children had been transferred property of $275,801.54, less $63,646.42, or $212,155.12. This latter amount equals, exactly, the total clear market value of all of decedent's separate property combined with *all* of decedent's one-half of the community. In other words, the appraiser determined that all of decedent's separate property and all, and not just one-half, of decedent's half of the community property, was transferred by decedent to the children. Objections were filed by the petitioners, the wife and children, and the court rendered its decision in favor of the petitioners.

The court found that the widow was entitled to a life estate in trust in one-half of decedent's one-half of the community property which had a value of $79,739.29. The court also found that the transfer to the wife was ''not made upon the condition that she elect to accept the provisions of his said Will, and particularly, said transfer to her was not conditioned upon her election to accept the provisions of his said Will disposing of her one-half interest in the community property; . . .'' The court also found that decedent's spouse did, in fact, elect to dispose of her interest in accordance with the terms of the will.

The court therefore concluded that the transfer by the decedent to his spouse of a life interest in trust in one-half of his one-half of the community property was not subject to California inheritance tax.

 As is obvious, the Controller, not being bound by the trial court's construction of the will in the distribution proceedings, is here contending that that construction was wrong and that the will conveyed all of the community property into the trust—a trust in which the widow had only a life estate.

From that premise, the Controller argues (as we understand it) : (a) that the widow was put to an election either to take nothing under the will or to waive her statutory right to receive one-half of the community property in fee in exchange for the receipt of a life interest in trust in one-half of the husband's share of the community—an election which she was

bound to exercise in favor of the testamentary provision by her "acceptance" and which, in fact she did make; and (b) that, since the decree of distribution was binding on the children, although not on the Controller, the widow received one-half of the community property in fee as a judgment creditor of the children and not as a widow.

For the reasons set forth below, we conclude: that the trial court properly construed the will; that, in spite of the language in paragraph Second of the will, that document transferred only the husband's one-half of the total community property. From that conclusion it follows that the trial court correctly determined the inheritance taxes involved and that its order must be affirmed.

In the case at bench there is a general statement in the will which could be construed to mean that the testator intended to dispose of his wife's part of the community property as well as his own. Paragraph Second provides: ". . . I further declare that I intend by this Will to dispose of not only my separate property, but likewise, with my wife's approval and consent, of all of the community property." However, in the latter and more specific dispositive provisions of the will, the testator appears to dispose of only *his* half of the community property and his separate property. In the third paragraph the testator said that he disposes of "one-half of *my* community property and all of *my* separate property." (Italics added.) In the Fourth paragraph the testator says that he leaves the "rest, residue and remainder of *my* estate," to his wife. (Italics added.) █ A will must be read as a whole, and all parts construed together. (*Estate of Johnston* (1956) 47 Cal.2d 265 [303 P.2d 1].) If the meaning of any part of the will is ambiguous or doubtful, it may be explained by another part, and where several parts are irreconcilable, the latter prevails. (Prob. Code, § 103.) █ Viewing the will as a whole, and considering the latter parts as prevailing, it appears the testator intended to dispose only of his one-half of the community property and his separate property. Where the testator does not intend to dispose of his property and also of both of their property, no election would be required. See *Estate of Orwitz* (1964) 229 Cal.App.2d 767 [40 Cal.Rptr. 545].)

The cases cited by the Controller (*Estate of Whitney* (1916) 171 Cal. 750 [154 P. 855], and *Estate of Wyss* (1931) 112 Cal.App. 487 [297 P. 100]), are not controlling. In those cases the waiver signed by the wife clearly refers to the fact

that she understood that the decedent was disposing of *her entire* community property and the wife in each of those cases waived her right to her share of the community property. In the case at bench the wife merely signed an approval of the will in which she consents to the terms of the will and to the "disposition of the community property made by" the decedent. There is no indication in her approval of the will that she either waived her rights to her statutory share of the community property or that she understood her husband to be disposing of her share of the community property. This construction does not make the wife's "approval" meaningless. We do not know what *inter vivos* rights she may have acquired to control the husband's disposition of either his separate or his share of the community property, or what attack she might have made on the will. Her written "approval" was a bar to any attack she might otherwise have made on the will; it did not necessarily, any more than it did expressly, infer that she was *by that document* agreeing to accept a life interest in trust in *her* community property in lieu of a distribution in fee.

It necessarily follows that, under the construction of the will which we adopt, the widow had nothing to "elect." She received one-half of the community property by virtue of the statute; she received one-fourth of the community property as the transferee of the husband.

The fact that, thereafter, she may have taken action which had the effect of conveying to her children a remainder interest in her one-half of the community property does not affect the taxes due in the probate of the husband's estate. There is nothing in the record before us to sustain the Controller's theory that the widow was, in some way, *required* to place her share of the community property into the trust in order to receive a life interest in the trust established over the husband's share. From the record before us, that was a voluntary action on her part. Whether or not it has, or will, result in some tax consequence in some other proceeding is not herein involved.

The order appealed from is affirmed.

Jefferson, Acting P. J., and Dunn, J., concurred.