**In re ESTATE of Fannie BOMASH, Deceased.**

**Julian BOMASH, Administrator, Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 24044.**

United States Court of Appeals, Ninth Circuit.

Oct. 2, 1970.

---

William L. Goldman (argued), Johnnie M. Walters, Asst. Atty. Gen., Tax Division, Dept. of Justice, K. Martin Worthy, Chief Counsel, I.R.S., Washington, D. C., for appellants.

Bernard W. Shafer (argued), Beverly Hills, Cal., for appellee.

Before BARNES and HUFSTEDLER, Circuit Judges, and BYRNE,* District Judge.

BYRNE, District Judge:

The Commissioner of Internal Revenue has appealed to this Court to reverse a decision of the United States Tax Court which redetermined a tax deficiency on the estate of Fannie Bomash (hereinafter referred to as "Fannie").

* Honorable William M. Byrne, United States Senior District Judge, Central District of California, sitting by designation.

In 1942 Fannie's husband, Louis Bomash, died. Louis's will set up a testamentary trust composed entirely of community property. By the terms of the will, 50% of the trust income was payable to Fannie for life and the remainder payable to various offspring. Roughly one-half of the trust corpus consisted of Fannie's one-half share of the community property and the other half of the corpus was Louis's share of the community property.

Fannie's share was placed into the trust by means of an endorsement to Louis's will in which she acquiesced in his disposition of the community property. Fannie's election to take under her husband's will rather than her statutory share was found by the Tax Court to constitute a "transfer" of property within the meaning of Section 2036(a) Title 26 U.S.C.[1] [transfers with retained life estate]. Although the appellee argued the contrary position in the Tax Court, it has not cross-appealed from that part of the Tax Court's decision finding a "transfer".

Under the laws then in effect (1942), all of the community property was taxed to Louis's estate when he died.

When Fannie died, however, her estate tax return included only income accrued to her and failed to include any portion of the trust corpus. In a notice of deficiency the Commissioner held that 50% of the corpus was includable under Section 2036.

The Tax Court held that only 25% of the corpus should have been included. The Tax Court reasoned in its published opinion:

" * * * decedent by her transfer *completely intermingled her property* with the property passing under her deceased husband's will and *since she had a 50% income interest in the*

*whole trust she retained only 50% of the income from the property which she transferred to the trust.* Since she retained only 50% of the income from the property she transferred to the trust * * * the corpus she transferred to the extent necessary to support the 50% income which was to go to decedent's children and grandchildren, is not includable in decedent's estate for Federal estate tax purposes. Estate of Tomec, 40 T.C. 134." (emphasis supplied)

This is the heart of the Tax Court decision. Its reliance on the *Tomec* case is very puzzling. In *Tomec* an *inter vivos* trust was established to provide a $10,000 annual income for the settlor's children. Under the language of the trust, if a child (one of four children) of the settlor and all of the children of that particular child should predecease the settlor, then $2500 (one-fourth of the trust income) would be added to the corpus. Holding that the trust transfer *was not a transfer* for the benefit of the decedent (and thus not invoking the effect of § 2036), the Tax Court said:

"The possible income which might be added to the trust corpus should one of the decedent's children predecease her leaving no issue, is *not part of the property which decedent has transferred to the trust,* but would constitute additional trust corpus." (emphasis supplied)

Aside from attempting to extend the *Tomec* case to a situation in which the deceased taxpayer allegedly intermingled all of the subject property passing to the trust corpus, the Tax Court also departed without explanation from its sound decision in Estate of Gregory, 39 T.C. 1012, in deciding the instant case.

---

[1]. Section 2036 "Transfers with retained life estate" provides in subsection "a" that:

"The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a

transfer (*except in the case of a bona fide sale for an adequate and full consideration* in money or money's worth) * * * under which he has retained for his life [the right to income from the property]."

In *Gregory* the husband left his portion of the community property to a testamentary trust to which his widow transferred her one-half of the community property. Contrasted with the Bomash will, the *Gregory* instrument gave the widow the right to a life estate in all of the net income which arose from the trust estate. The *Gregory* taxpayer attacked the Commissioner's determination that the widow made a transfer with a retained life estate within the scope of Section 2036(a) (1) on the grounds that Section 2036 was inapplicable because Mrs. Gregory derived a life estate composed of not only her former property, but also that of her husband.

Finding the taxpayer's argument to be without merit, the Tax Court in *Gregory* held:

"Lillian (widow Gregory) owned some property; she conveyed it to a trust; and she retained the income from that property for life. The fact that she also received income from some other property goes *only* to the question of consideration under 2043. *A retained life estate in one's own property in substance is all that the statute requires.*"

■ The reasoning of the *Gregory* case applies *a fortiori* to our case in which the widow did *not* retain a life estate in *100%* of the trust income. The retention of *50%* income from the entire trust corpus (which includes Fannie Bomash's half contribution) is identical *in substance* to a retained *100%* income life estate in her own one-half of the community property. The objective economic reality of this case is the fact that Mrs. Bomash did not alter her position by placing her community property share in trust. We are guided by the Supreme Court's caution in United

States v. Grace's Estate, 395 U.S. 316, 89 S.Ct. 1730, 23 L.Ed.2d 332 (1968) that "the law searches out the reality and is not concerned with the form". Most importantly, we heed the *Grace* Court's clear rule that "the taxability of a trust corpus * * * does not hinge on a settlor's motives, but *depends on the nature and operative effect of the trust transfer*".[2]

Since the record demonstrates that (in the words of *Grace*) Mrs. Bomash's "effective position * * * vis-a-vis the property did not change at all" when the trust was established, it was error for the Tax Court to conclude that the Bomash estate should *not have been taxed on 50% of the entire trust corpus.*

■ The appellee contends that because the Government taxed Louis's estate for all the community property in 1942, Fannie's estate cannot now be taxed for one-half of that same property.

The appellee argues:

"With the death of decedent (Fannie), the Tax Court below decided on the one hand that decedent always under California law had a vested interest in her share of the community property and by reason thereof did have a property interest capable of coming within the ambit of § 2036. On the other hand, it held that decedent's husband at his death could constitutionally be deemed to be the 'owner' thereof for estate tax purposes".

As a result, appellee continues, in the absence of joint ownership the property interest in any portion of the community cannot belong to two separate persons at the same time.

This argument misconceives the estate tax scheme. A similar theory was rejected by the Third Circuit in Hornor's Estate v. C.I.R., 305 F.2d 769, 772 (1962) which considered an attack on

2. United States v. Grace's Estate, *supra*, at 323, 89 S.Ct. at 1734 [quoting from Estate of Spiegel v. Commr., 335 U.S. 701, 709, 69 S.Ct. 301, 93 L.Ed. 330 (1949)] (emphasis supplied).

It is also significant to note that the *Grace* Court found that the settlor "in

a very real and objective sense did retain an economic interest while purporting to give away his property." Can we not say that Mrs. Bomash is alleged to have made the same disposition purportedly made in the *Grace* case?

§ 811(c) of the 1939 Code—the predecessor of the current § 2036.

The *Hornor* court held that "there is no requirement in this section that a decedent have had at one time or other complete ownership or 'unfettered control' over property before it can be included in the decedent's gross estate * * * *".

Significantly, the *Hornor* case dealt with a fact situation almost identical to the circumstances in our case—property of husband and wife was included in Mr. Hornor's estate at the time of his death, and one-half of that property was included in his widow's estate at her earthly departure.

The appellee further argues without authority that since the entire community was taxed in Louis's estate, then Fannie should be treated in the same manner "as a surviving spouse in a common law state" because this "contravenes uniformity in the laying of excise taxes which the Constitution commands".

■ This is without merit. As pointed out by the Commissioner, the Supreme Court stated in Fernandez v. Wiener, 326 U.S. 340, 359, 66 S.Ct. 178, 188, 90 L.Ed. 116 (1945):

"* * * the uniformity in excise taxes enacted by the Constitution is geographical uniformity, not uniformity of intrinsic equality and operation. * * * The Constitution does not command that a tax 'have an equal effect in each State'".

■ There is an additional issue raised for the first time on appeal by the appellee—§ 2036 is unconstitutional because of "lack of uniformity and equal protection under the Fourteenth Amendment".

The Supreme Court in Morley Const. Co. v. Maryland Casualty Co., 300 U.S. 185, 57 S.Ct. 325, 81 L.Ed. 593 (1937) held:

"without a cross-appeal, an appellee may 'urge in support of a decree any matter *appearing in the record* although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it'". (emphasis supplied)

The constitutional question raised by appellee does not appear in the record before us and should not be considered on appeal.

One final point needs to be made. The Tax Court used the term "intermingled" in describing the manner in which Louis's and Fannie's share were included in the trust corpus.

■ In the California law of community property the word "commingled" has been used interchangeably by state courts with the word "intermingled". See generally 10 Cal.Jur.2d § 35.

■ The words themselves are considered as words of art to connote the mixture of separate property or funds with community property or funds. Under the well-established rule as stated in the case of Grolemund v. Cafferata, 17 Cal.2d 679, 111 P.2d 641 (1941) a presumption arises that all of the mixed property is community property in the absence of other evidence.

In our case there was no separate property contributed by either Louis or Fannie to the trust.

If the Tax Court used the word "intermingled" (in the sense of the meaning it has acquired under California law) to imply that the separate contributions of Louis and Fannie *could not be ascertained* once they entered the trust, it is clearly wrong. By reference to the trust instrument itself, the shares could have been divided and returned to the respective husband and wife parties.

For the Tax Court to conclude that because the property that "composed the trust was intermingled" so that "it constituted a total trust estate and *not divisible parts*" is to flee from the reality of the financial arrangement set up by the trust.

The decision of the Tax Court is reversed; the Commissioner's determination that the tax return of the Fannie

Bomash estate was deficient, in that the return did not include 50% of the corpus of the testamentary trust activated by the will of Louis Bomash, is ordered reinstated in full in a revised Tax Court Judgment.

HUFSTEDLER, Circuit Judge (separately concurring):

I agree with the ultimate result reached in the majority opinion, but because I am unable to concur fully in the rationale of the majority, I set forth my views separately.

Section 2036(a) of 26 U.S.C. states two elements to be used in determining the extent to which Fannie's estate shall be subject to tax: (1) that the decedent shall have made a transfer of an interest in the property, and (2) that, by trust or otherwise, the decedent shall have retained a life interest, including a right to income, from the property transferred. Both requisites have been met in Fannie's case. The difficulty in applying section 2036(a) to Fannie's estate lies in the proper characterization of the interests she respectively transferred and retained. That difficulty stems from the fact that those interests were undivided interests in community property.

Before Louis died, Fannie and Louis each owned "present, existing and equal interests" in their community property. (Cal.Civ.Code § 161a.) Neither spouse was irrevocably committed to the testamentary plan encompassed by Louis' will and by Fannie's waiver, because there was nothing in those documents from which a binding bilateral contract could be extracted. On Louis' death, however, Fannie's waiver became irrevocable on either one or both of two theories: First, Fannie's waiver constituted an offer for a unilateral contract. When Louis did not change his will before he died, he is deemed to have accepted her offer by performance, and she is bound by the will for which she bargained. (Security-First National Bank of Los Angeles v. Stack (1939) 32 Cal.App.2d 586, 90 P.2d 337; O'Neil v. Ross (1929) 98 Cal.App. 306, 277 P. 123; see Wells Fargo Bank & Union Trust Co. v. United States (9th Cir. 1957) 245 F.2d 524, 528–531.) Second, Fannie was estopped from denying the validity of her waiver when, in reliance upon her waiver, Louis did not change his will before his death. (Estate of Wyss (1931) 112 Cal.App. 487, 297 P. 100.) On either theory, Fannie made a transfer within the meaning of section 2036 (a) at the date of Louis' death.

What did she transfer and what did she retain? She transferred all of her interest in the community property to the trust and retained 50 percent of the income from the trust corpus for her lifetime. According to the Tax Court, her half of the income from the corpus was attributable half to the community she had contributed and half to the community Louis had contributed; therefore, her estate is taxable only to the extent of half of her half. According to the majority opinion, the income she retained was derived solely from the half she contributed and no part of the community Louis transferred should be taken into account as the source of her income. Both the opinions of the Tax Court and of the majority of this Court rely on legal fictions. The Tax Court's fiction is that the Bomashes divided their undivided community property horizontally: that Fannie conveyed one half of her half to that portion of the corpus from which the children derived income and that she conveyed the remaining half to the trust from which she retained one quarter of the total income and that Louis made transfers to the trust that mirrored Fannie's. The majority opinion's fiction is that the Bomashes divided the community vertically and that all of the income Fannie received was attributable solely to the half she contributed. The majority opinion does not explain why, with equal logic, a third fiction is not applicable: The testamentary plan did divide the community vertically, but all of the income that Fannie derived from the property came from the half that Louis contributed.

I think that the three fictions should be discarded. None of them supports any intent expressed or necessarily implied in the will and the waiver. One is no more abstractly logical than the other two. All three ignore the reality that all of the income was derived from undivided community.

I would take the direct route, following the economic reality rationale. I would hold that a transfer in trust of Fannie's undivided one half interest in the community, together with her retention of the income from one half of the undivided community corpus results in the inclusion of 50 percent of the trust corpus in her estate. Her economic position is in no respect different from what it would have been had she made an inter vivos transfer of her undivided half of her community to her children, retaining a life estate in the income from that property. The results for tax purposes should be the same.

The apparent harshness of the result flows not from the application of section 2036(a), but rather from the harshness of the tax laws as they stood in 1942, whereby the entire community was taxed in Louis' estate. I agree with the majority that the Estate's effort to attack the result on constitutional grounds is frivolous.